Parker C. J.
This action is indebitatus assumpsit on money counts. It is brought to recover back a sum of money paid by the plaintiffs to the defendants for the freight of a number of barrels of apples taken on board their ship, the Topaz, bound from Boston to Liverpool. It is proved by the bill of lading signed by the master, and an account r =de out by the owners, with their receipt upon it, that the w.iole freight agreed upon was paid before the sailing of the vessel, and the report finds, that before the vessel arrived- at h< port of delivery abroad, she was stranded or wrecked on a neach within six miles of her port, by means of which a large -jftion *21 o the p.aintiffs’ apples were destroyed, or rendered worthless b7 *e salt water.
This brief statement presents the principal question which has been argued ; there are other facts in the report material to some inferior questions, which will be stated in their proper place.
The plaintiffs contend, that the consideration for the payment ol the money was the agreement on the part of the owners to transport the apples in their ship to Liverpool; and that having failed to do this, they are bound in conscience to return the money ; and that an action at law lies for it, upon the ground of failure of consideration. The defendants insist, that the payment of the freight in advance imposes all risks upon the owner of the goods, and that the failure of transportation and delivery having happened without their fault, there is no legal nor equitable principle which will oblige them to refund. Some reliance in support of their defence is placed upon the condition expressed in the bill of lading, that the goods are to be delivered safely, “the dangers of the seas ex cepted but as this condition has in practice been applied only to the contract in relation to the goods themselves, so as to protect the ship-owner from a demand for their value in case of loss by perils of the sea, and has never been construed to bear upon the rights of the parties in relation to the freight, we cannot see any thing in that instrument which can affect the question before us. This must stand upon the principles of marine or mercantile law, so far as they may have been recognised and adopted, or may be found agreeable to the rules and maxims of the common law.[1]
It is certainly a clear principle of the common law, that when money is paid or a promise made by one party in contemplation of some act to be done by the other, which is the sole consideration of the payment or promise, and the thing stipulated to be done is not performed, the money may be recovered back, or the promise founded on such consideration *22 may be avoided between the parties to the contract. This *' e e general principle is the foundation of perhaps the largest class of cases which have been sustained under the action for money had and received. Exceptions may be made by a stipulation of the parties, but without such exceptions the rule seems to be universal.
And this broad principle of justice has been adopted in the marine law, in relation to this subject of freight, upon the continent of Europe, as is very fully proved by the researches made and the cases cited by Chief Justice Kent, in the case of Watson v. Duykinck, 3 Johns. R. 335.
It would be but an affectation of learning to go over the ground which has been so ably preoccupied in the opinion given in that case, especially as the same ground has been traversed by Mr. Justice Story in a note in his edition of Abbott on Merchant Ships &c., which note was avowedly supplied from the opinion of Chief Justice Kent above cited. I wish for one, since books are so prodigiously multiplied, to spare the profession and the public the expense of reiterated citations on points indubitably settled, when both text and comment may be found in almost every book in a lawyer’s library. It is sufficient then to say, that by reference to the abovecited opinion and the note of Mr. Justice Story, it will be found to be the established law of the maritime countries on the continent of Europe, that freight is the compensation for the carriage of goods, and if it be paid in advance, and the goods be not carried by reason of any event not imputable to the shipper, it is to be repaid, unless there be a special agreement to the contrary.[1]
The commercial principle recognised by the continental nations is reduced into the form of a maxim in the Napoleon Code de Commerce, tit. 8, art. 302. “ No freight is due for merchandise lost by shipwreck or stranding, plundered by pirates or taken by enemies. The master is bound to restore freight which shall have been advanced, if there is no agree *23 ment to the contrary.” This, like most of the provisions m the modern French codes, is not the introduction of a new principle, but the new promulgation of antecedent law in a more convenient form, as was the case with the Digest and other works executed under the auspices of Justinian, of whom the emperor Napoleon was in this respect an imitator.[2]
It is admitted in argument, that such is the law of the continental powers, but it is suggested that it has not been introduced into the English law, and therefore there is no evidence that it belongs to our common law. It is true there are few cases in the English books touching this point, but it is equally true that the principle has never been denied there ; on the contrary, in the case cited from 1 Campb., Lord Ellenborough, who was a great mercantile judge, recognises it in the full extent of the Code de Commerce ; and the cases cited from 4 Manle & Selw.,2 and 4 Barn. & Ald. and 5 Taunt., proceed upon the ground of a stipulation in the several contiacts which were under discussion, similar to the exception in me continental rule above cited ; and the obiter remark of Mr. Justice Bayley, in the case of De Silvale v. Kendall, that wherever there is an express stipulation that freight shall be paid in advance, there must be an express stipulation that it «hall be recovered back if the goods be not carried, if such be the intention, will be found not to militate against the general principle.
A distinction was raised in the argument, between payment of freight and an advance of it, it being supposed to be recoverable back in the latter case, but not in the former. But we do not find this distinction supported by authorities, nor do we see any sound reason for it. We think an advance of freight means the same thing as payment of freight beforehand or in advance, and whether the whole is paid or a part we think makes no difference.
In the English cases cited a very nice discrimination has been adopted between a contract for freight, which includes an obligation to transport and deliver, and a contract to receive *24 the goods on board the vessel. That a contract of the latter nature may be made, so that it will be considered as executed by the mere lading of the goods, we do not doubt; but we cannot think that such a contract can be implied from the mere fact of the freight’s being paid down, because reasons may and often do exist for exacting this, without any intention to vary the legal liabilities of the parties. If persons apply for a passage in a vessel, as is often the case between this country and Great Britain, whose responsibility may be doubtful, and they are received on board at the customary price on condition of advancing the passage money, and the vessel should be wrecked immediately on commencement of the voyage, so that the passengers would have to seek another vessel and pay their pas sage money again, we cannot think that the master or shipowner would have a right to retain the money, unless there were an express agreement to that effect. The case of Watson v. Duykinck above cited is somewhat of this nature. In that case the voyage was broken up two days after its commencement, and the passenger, instead of being carried to the island of St. Thomas, was landed in Connecticut. He however was not allowed to recover back the passage money which had been paid in advance, on the ground that the consideration was an agreement on the part of the master to suffei' him to proceed in the sloop &c., and that the master had suffered him to come on board, which was an execution of the contract. I confess this does not seem to me to be the most obvious ffect of the contract; but it was by this construction only that the defendant prevailed, the court being clear that were it a common case of passage money paid in advance, by the principles of the marine law, engrafted into the common law, it must have been recovered back. The same principle applies with equal force to money paid in advance for the freight of goods.[1] Such payment does not import a relinquishment of any right, for it may have been exacted because the goods themselves might not be a sufficient security for the freight, and the owner of the goods might not be responsible.
*25 The case before us is likely to have been of that kind. Fruit was the subject of the contract; it was of a perishable nature and liable to great uncertainty as to its value in a foreign market; the owner of it may have been a person of no property; and for these reasons the payment down may have been exacted.
But one of the counsel for the defendant has put the case on ground which admits the general principle, that freight may. be recovered back when the goods are not delivered, unless there be an agreement to the contrary, but he insists that such an agreement does appear from the evidence, that is, from the bill of lading and the receipt on the account. But we think they furnish no evidence of such an agreement; they merely prove that the freight was paid in advance.
Indeed it will be seen at once, that if the payment of freight thus proved were to be construed into a stipulation that it should not be recovered back, the whole doctrine of the marine law on this subject would be useless. The maxim is, that freight paid in advance, if the goods be not carried, shall be returned, unless there be a stipulation to the contrary. Now it the mere payment proved such stipulation, there would be no case for the rule to operate upon. So that when Mr. Justice Bayley says, that where there is an express stipulation to pay freight in advance, there must also be an express stipulation to pay it back in order to entitle the shipper to recover, he means something more than the mere payment of the freight, which may be equivocal. He means undoubtedly an express stipulation in the contract, because it might be inferred from such a stipulation, that the parties had calculated hazards, and that an equivalent had been obtained in some form for the advance of money which otherwise would be due only on a contingency. And he was there reasoning upon a case which might fairly sustain such an argument.
It is said that the rate of exchange between this country and England gave an advantage to the plaintiffs which may have been the consideration for paying freight in advance. That fact does not appear in the report, and if it did it could not affect our decision. If the intent of the parties had been submitted to the jury, as was done by Chief Justice Gibbs in the *26 case cited from 5 Taunt. 435, it might have been material, but we do not find that the fact was offered to be proved at the trial, so that we do not see that any use can now be made of it.

Judgment for the plaintiffs.

 Whether ship-owners are entitled to retain money received on account o freight, is clearly a question not for the jury, but for the court, under the eir cumstances of each case. Wirgman v. Mactier, 1 Gi. & Johns 150.

 See Samson v. Ball, 4 Dallas, 459; Giles v. Brig Cynthia, 1 Peters’s Adm. R. 203, 206, 207, note; Cheriot v. Barker, 2 Johns. R. 346; Gillan v. Simpkin, 4 Campb. 241; Harris v. Rand, 4 N. Hamp. R 259, 555; 3 Kent’s Comm, 2d ed.), 226, 227.

 Ord. de la Mar. tit. Du Fret, art. 18; Cleirac, Les Us. et Coulumes de la Mer, p. 42.

 In general, freight and passage money are governed by the same rules. Mulloy v. Backer, 5 East, 316; Howland v. Skip Lavinia, 1 Peters’s Adm. R 123, 125