JAMES S. AYRES ET AL. v. HENRY C. DUTTON ET AL.

*Location of institution—Aid subscription—Equitable lien.*

Complainants are 16 of 147 signers of a subscription paper, by
which the subscribers agreed to pay specified sums for the
purpose of inducing defendant to erect a flouring-mill. The
mill was erected, and, after operating it for over two years at
a loss, the defendant sold the machinery, and was preparing
to remove it, when complainants filed a bill to enjoin such
removal, and for a decree declaring their subscriptions a lien
upon the property. There was no express stipulation, verbal
or written, that defendant should continue the business for any
specified time. And it is held that the evidence establishes
the fact that defendant fully complied with his agreement,
and made an honest and faithful attempt to render the busi-
ness a success, and that, having done this, he was no longer
compelled to carry on the business, and had the right to sell
and remove the machinery; and that, there being no express
provision for a lien, none can be implied in favor of the com-
plainants.

Appeal from Huron. (Beach, J.)   Argued June 9,
1891.   Decided October 9, 1891.

Bill to enjoin the removal of milling machinery, and
to declare an equitable lien.   Defendant Dutton appeals.
Decree reversed, and bill dismissed.   The facts are stated
in the opinion.

*James H. Hall* (*W. L. Carpenter,* of counsel), for com-
plainants.

*W. T. Bope* and *H. G. Snover* (*Q. A. Smith,* of coun-
sel), for appellant.

GRANT, J.   The complainants, 16 in number, are resi-
dents of the village of Port Austin.   They, together with

others, numbering in all 147, were desirous of having a flouring-mill built at said village. Conversation took place between some of the complainants and the defendant Henry C. Dutton, who was a practical miller, and then a stranger in that community. The result of these conversations was that Dutton offered to erect a mill of a certain capacity, provided that a bonus of $2,500 was raised by the citizens of the village and vicinity, and sufficient ground given on which to erect the mill. A meeting of citizens was called, and a committee of three was appointed, two of whom are complainants here, to complete the arrangement, and attend to the raising of funds. A subscription paper was drawn up, which reads as follows:

"In consideration of our mutual promises, and in consideration of and for the purpose of inducing H. C. Dutton to construct a roller process flouring-mill in the village of Port Austin, Michigan, of seventy-five barrels per day capacity, severally promise to pay to said H. C. Dutton the sums set opposite our respective names, as follows: Two-fifths thereof when the mill building is completed and ready for the machinery, and two-fifths thereof when the machinery is delivered at the mill ready to be set up, and the balance when the mill is completed of that capacity, and in operation, which shall be February 11, 1888.

"*Dated Port Austin, Mich., this* 12th *day of September,* 1887."

The subscriptions amounted to $2,374, of which $165 still remains unpaid.

Three of the complainants, Frederick, James, and Ebenezer Ayres, comprised the firm of Ayres & Co. They deeded the land to Dutton September 29, 1887, and at the same time Dutton executed an agreement with them by which, among other things, it was provided "that in case said flouring-mill to be erected upon said lots should

87 MICH.—34.

be destroyed by fire within three years, and another flouring-mill of like kind and capacity is not. erected upon said lots within said three years, or its erection begun within said three years, and completed within a reasonable time thereafter, said Dutton shall deed back said lots to said Ayres & Co.," or, if he was unable to reconvey, he should pay Ayres & Co. $300 as liquidated damages. These are the only two written documents in connection with the transaction. All else rests in parol.

The defendant Dutton erected the mill according to the terms and specifications, and carried on the business for about two years and a half. The investment was a losing one for him, and, after offering to sell the property to other parties, who are complainants in this suit, at a considerable sacrifice, he sold the machinery, and was proceeding to remove the same, when this bill was filed, and he was enjoined.

The original bill set up a bonus of $2,500 paid to Dutton, and prayed that said sum, with interest from the time of payment, be decreed to be paid into court for payment back to the several subscribers; that the complainants Ayres be paid the sum of $300; and that, in default of such payments, the defendants be enjoined from removing the mill. Subsequently complainants filed an amended bill, in which their prayer for specific relief was to enjoin the removal of the mill and its machinery. There was also a general prayer for relief. The court below found that the amounts subscribed were paid upon the equitable and implied consideration that Dutton should erect the mill, and operate it with ordinary business skill, and fairly attempt to make the same a profitable and permanent business; that it was not carefully and skillfully conducted; and that it was inequitable toward the subscribers to remove the mill. The decree

was for a lien upon the mill and machinery for the amounts paid by complainants, and that, until such payments be made, defendants be enjoined from removing the machinery.

There was no express stipulation, either verbal or written, that Dutton should continue the business for any specified time. The building and plant were erected by Dutton as agreed upon, at an expense of about $10,500.

1. Complainants have failed to establish a case for the relief asked. Complainant Campbell is in default upon his subscription, and makes no offer to pay the balance due from him. The bill alleges that the agreement was for a bonus of $2,500; that this amount was subscribed and turned over to Dutton, and accepted by him as money. It is now conceded that the whole $2,500 was not raised or subscribed. It is neither alleged nor proven that Dutton received the subscription pledges as a fulfillment of the agreement on the part of the complainants and their co-subscribers. The demand of complainants, therefore, is in violation of the universal rule that they who ask equity must do equity.

2. It was undoubtedly contemplated by the subscribers and by Dutton that the business would be permanent, as the plant itself was permanent in character. It was undoubtedly also contemplated that the business would be successful. Neither party, therefore, thought of making any provision as to time. No bonus would have been subscribed, and Mr. Dutton would not have expended nearly all his means, if any serious doubt of the success of the enterprise had existed. The subscribers to the bonus gave no guaranty. It was a common venture, in which the subscribers staked their bonus of $2,500, and Mr. Dutton the balance, about $8,000. It would be against reason and common sense, under these circum-

stances, to imply an agreement on the part of Mr. Dutton to continue the business at a loss. We have not before us the case of a successful business under like conditions, and upon such a case we intimate no opinion. It remains, therefore, to determine from the record presented to us whether defendant Dutton made a fair and honest effort to render the business a success, so as to warrant its continuance. The business was not successful, and the court below attributed the failure to want of care, skill, and attention on the part of Mr. Dutton. There is no charge or evidence of bad faith on his part. He fully complied with his agreement in erecting the mill. He had more at stake, and was more deeply interested in the success of the enterprise, than any other person. The chief complaint against him is that certain customers who took wheat to the mill did not receive good flour in return, and in some instances received short weights, and that in consequence farmers took their wheat to other mills, or sold it in other places. Several other mills of a like character were doing business not far from this one. Several millers testified in the case, and from the evidence it is at least doubtful whether the complaints against Mr. Dutton in this respect were more common than against millers generally. Several causes operated against Mr. Dutton, which it is not necessary to enumerate. I think the evidence establishes the fact that Mr. Dutton fully complied with his agreement, and made an honest and faithful attempt to render the business a success. Having done this, he was no longer compelled to carry on the business, and had the right to sell and remove the machinery.

3. It follows that the complainants did not, by their subscriptions, obtain a lien upon the mill plant. There was no expressed provision for a lien, and none can be implied in such a case as this. It would be most

inequitable to hold that Mr. Dutton took all the risks, and, in the event of failure, must pay the subscribers, in addition to the large loss which he has incurred.

The decree of the court below is reversed, and bill dismissed, with the costs of both courts.

The other Justices concurred.