## WILLIAMS *v.* BUTLER, GUARDIAN.

[No. 8,784. Filed May 26, 1914. Rehearing denied December 23, 1914. Transfer denied January 28, 1915.]

1. CONTRACTS.—*Performance.—Contracts for Services of Personal Nature.—Death or Sickness of Party.*—A contract for services of a personal nature, that can not be performed by deputy, successor or representative, within the meaning thereof, is ended by the death, serious sickness or insanity of either party, and an action will not thereafter lie for specific performance, nor for damages for the breach thereof. p. 54.

2. CONTRACTS.—*Part Performance.—Death or Sickness of Party.— Liability on Quantum Meruit.*—Where an entire special contract for a stipulated compensation is partly performed and before completion one of the parties dies, or without his fault, performance is rendered impossible, there is no liability on the contract; but where one of the parties acting thereunder has done for or delivered to the other something of value, which has been accepted, the party so benefited is responsible on an implied promise, arising from the circumstances, under the *quantum meruit,* to the extent of the net value received by him, not exceeding the price or compensation fixed by the contract. p. 55.

3. CONTRACTS.—*Part Performance.—Death or Sickness of Party.— Liability on Quantum Meruit.*—Under a special contract of hiring for a particular service or definite term, the sickness of the employe incapacitating him for the contemplated service relieves both parties from the contract; but, unless a clear and definite intention is evidenced to deny any compensation except upon full and strict performance, the employe may recover on the *quantum meruit* for the value of the services rendered. p. 56.

4. CONTRACTS.—*Mutual Mistake.*—Mutual mistake of the parties as to some material fact which entered into their agreement is generally made ground for reforming the contract, but rarely affords a cause for rescission. p. 56.

5. CONTRACTS.—*Contract for Services of Personal Nature.—Failure of Consideration.—Rescission.*—Under a contract for the performance of services of a personal nature, a failure to render all the services contemplated, resulting from subsequent mental or physical incapacity, is not ordinarily ground for the rescission of the contract; but where both parties can be placed in *statu quo,* a party not in default, who has returned or tendered to the other whatever value he has received under the contract, may in certain instances enforce rescission or abandonment of the contract for failure of consideration resulting from a failure to perform. p. 57.

6. CONTRACTS.—*Construction.*—*Entire or Severable Contracts.*—A contract between the president of a trust company in his individual capacity and an experienced trust officer for the employment of the latter in the business of the company at a specified salary, and for the sale to him of a certain amount of stock in the company at less than its value, with the object in view of building up the company's business, was not severable as between the parties themselves, and having become an executed or consummated arrangement as between parties thereto, and the company affected thereby, the question of whether it was severable as between such parties and the company was of no controlling effect in determining the rights of the parties as between themselves. p. 57.

7. CONTRACTS.—*Contract for Services.*—*Subsequent Inability to Perform.*—*Recovery on Quantum Meruit.*—Where full performance of an entire contract for personal services and the sale to the employe of stock at less than its true value, was rendered impossible by the subsequent insanity of the employe, the other party was not entitled to recover on the *quantum meruit* the amount of the benefits received by the employe under the contract in the sale of the stock to him, less the value of the benefits conferred by him, where it appeared that the employment was for an indefinite period. pp. 58, 60.

8. CONTRACTS.—*Contract for Personal Services.*—*Inability to Perform.*—*Presumptions.*—In the absence of anything appearing to the contrary, the parties to a contract for personal services will be presumed to have taken their chances on the results that may flow from an act of God, and the party suffering loss thereby is without a remedy. p. 60.

9. CONTRACTS.—*Contract for Personal Services.*—*Subsequent Inability to Perform.*—*Rescission.*—Where full performance of an entire contract for personal services and the sale to the employe of stock at less than its true value, had been performed to the extent that the sale of the stock had been consummated and the employe had performed the duties of his employment for some time, and further performance was rendered impossible by the insanity of such employe, the other party to the contract was not entitled to a rescission of the contract either upon the ground of mutual mistake of the parties as to the health of such employe, or for failure of consideration by reason of his inability to perform, in the absence of anything in the contract providing for such contingencies. p. 61.

From Marion Circuit Court (20,034); *Charles Remster,* Judge.

Action by Charles N. Williams against Noble C. Butler, Guardian of John A. Butler. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Gavin, Gavin & Davis,* for appellant.

*Addison C. Harris,* for appellee.

Felt, C. J.—This suit was brought by appellant against appellee for rescission of a contract, and for a recovery in money upon the *quantum meruit*. The case was tried upon an amended complaint of three paragraphs, one of which sought rescission on the ground of mutual mistake and another on the ground of failure of a material part of the consideration. Another paragraph sought recovery upon the *quantum meruit*, for the amount of the benefits received by John A. Butler under the contract, less the value of benefits conferred by him in pursuance thereof. Issues were joined by an answer of general denial to each paragraph of the complaint. The case was tried by the court, and upon due request, a special finding of facts was made, upon which the court stated its conclusions of law in favor of appellee. Error is duly assigned on the conclusions of law and upon the overruling of appellant's motion for a new trial.

The facts found by the court as far as material to the questions presented for decision are in substance as follows: In May, 1906, appellant was the principal stockholder and president of the Farmers Trust Company, of Indianapolis, a corporation engaged in the loan and trust business, with a capital stock of $100,000, paid up, and worth par. John A. Butler was an experienced trust officer, secretary of the Indiana Trust Company, with a high reputation for efficiency and capacity as such. Appellant desired an experienced, capable man as first vice president and treasurer of said company, to build up its trust department. The Farmers Trust Company then had a large and valuable business, requiring a great deal of labor from its officers

and managers, and it was to its interest and that of appellant to procure a competent man capable of filling said positions and doing the work desired. Said Butler was desirous of forming a connection with said company and of obtaining stock in it, with the view of building up a trust department for it, increasing its business and making its stock more valuable, in order to secure to himself the benefits of continued and permanent employment and the consequent enhancement of the value of his stock. Both Williams and Butler believed that by continuous and persistent effort in its management, and by Butler's skill and experience, the business of the company, especially in its trust department, would be greatly increased and become more valuable. Thereupon, on May 14, 1906, appellant and John A. Butler entered into a written contract which showed that appellant was the owner of $71,600 of the capital stock of said company and expressed the intentions and plans of the parties thereto with reference to the officers, directors and business of said company, and stated that "In consideration of the premises and of the mutual covenants and agreements" therein recited, the parties mutually agreed to the several provisions of the instrument; that Butler agreed to purchase of Williams and he agreed to sell to Butler 175 shares of the stock of said company, for $10,000; that Butler and certain other persons named in the contract agreed upon by the parties should be elected as directors of the company for one year beginning July 1, 1906; that Butler should at that time be made vice president and treasurer of the company at a salary of $3,600 per year and should have special charge of, and devote his time and attention to, the building up of the trust department; that Williams should perform all the usual duties of president of such company and have charge of and give his special attention to the business of the loan department of said company; that it was mutually agreed that each of the parties should devote all of his energies and abilities to advance and promote the best inter-

ests of the company and its stockholders; that each should devote all his time and attention thereto exclusively within ordinary business hours; that on said day Butler valued the property of said trust company at $90,000, but it was in fact worth $100,000, and Williams and Butler both believed the stock to be worth par and it is now, and has been, since the commencement of this suit, worth not less than $135 per share; that appellant fully performed his part of the contract, and has devoted his time to the upbuilding of the business of said company; that Butler performed his part of said contract and his duties thereunder until it became impossible for him to do so by reason of his ill health and insanity; that the trust company elected no successor to Butler as treasurer until July, 1908; that prior to entering into said contract, Butler had been seriously afflicted with disease in the membranes and bones of the head and had suffered intensely therefrom; that pus had formed in the antrums and frontal sinus and several operations had been performed to relieve him, and finally, in 1903, he went to New York where the frontal sinus was obliterated, and after four or five months' care he was greatly improved in health; that during most of this time, except while in New York, he continued to perform his duties with the Indiana Trust Company and his conduct and actions were those of a competent, careful, skilful, diligent, trustworthy employe and officer; that from 1904, up to the time of his connection with the Farmers Trust Company, said Butler suffered from headaches, from time to time, and on occasions manifested some nervousness; that after entering the services of said trust company, he continued to suffer from headaches and pain in the head, at intervals more frequent than theretofore, and suffered from inability to sleep and became nervous and somewhat irritable and manifested a disposition to worry over inconsequential matters, but continued to perform his duties with said company until the latter part of January, 1907, when he was sick with the grippe and in-

capacitated for a few days; that thereafter he suffered a relapse, but visited the office occasionally until the latter part of February; that during his illness he showed signs of mental aberration, and about March 1, became maniacal and has since been permanently insane and wholly unable to perform his duties as officer and employe of said trust company; that said contract was made with the knowledge and consent of the officers and stockholders of said Farmers Trust Company and would have been advantageous to it, had Butler been and continued in good health and able to perform his duties; that said agreement was entered into in the belief, upon appellant's part, that Butler was in full possession of his physical and mental faculties, and that he would be able to perform his work and assist and coöperate with appellant in upbuilding the business of said trust company, and without any knowledge by appellant of any physical or mental infirmity on the part of said Butler; that Butler, when making the contract, was not completely cured and knew that his disease had not been wholly eradicated, but thought there had been almost a complete recovery, and did not believe that such disease would permanently and materially interfere with the performance of his duties; that he represented to appellant, and led him to believe that he was mentally and physically able and capable of performing such duties in accordance with said contract; that both of said parties entered into said contract with the belief that Butler was in full possession of his mental faculties and was not because of his physical condition, unfitted for, or incapable of, performing the duties of said offices and employment; that Butler was at the time of making the contract, in full possession of his mental faculties and had no knowledge that his mind would become permanently impaired by reason of said disease or from any other cause; that it was the mutual expectation and intention of both parties that the connection and employment of Butler and their association together in the upbuilding and manage-

ment of the company should continue for an indefinite period of more than one year; that the agreement of Butler to perform the duties of his offices, and especially in the trust department, and devote thereto all of his time and attention within ordinary business hours, was a material part of the consideration for the execution of the contract and sale of the stock by appellant upon the terms made, and the contract was made and the stock sold with the mutual expectation that Butler would do so, but because of his subsequent affliction aforesaid he was wholly unable to do so after March 1, 1907; that Butler received benefits under and by virtue of the contract of the aggregate value of $20,700, of which $17,500 was the value of the stock received by him from Williams and $3,200 was cash paid him for services to the company; that the company and Williams received from Butler under and by virtue of said contract, benefits of the aggregate value of $13,200, of which $10,000 was the cash paid Williams and $3,200 was for services rendered the trust company. Proper demand and tender for rescission were made and refused.

Appellant contends that he is entitled to a reversal and bases his claim on three propositions: (1) The contract was entered into under mutual mistake of appellant and John A. Butler as to the health and capacity of the latter to perform the service which by the terms of the contract he agreed to render in the building up of the business of the Farmers Trust Company. (2) There was a substantial failure of the consideration Butler agreed to give Williams, resulting from his sickness and insanity, and consequent inability to render the services aforesaid. On the findings of the court, appellant insists that for either of the forgoing reasons, he is entitled to a rescission of the contract and judgment for the difference of value found by the court in the sum of $7,500 and interest. (3) That Butler's inability to carry out the contract because of sickness and insanity, afforded a valid excuse for nonperformance, but it

is not the equivalent of full performance, and appellant is entitled to compensation measured by the benefit he actually conferred upon Butler over and above that given by Butler in services and money, not exceeding the contract price.

There is no question of fraud or bad faith involved in this case on the exceptions to the conclusions of law stated on the finding of facts. While death, sickness and

1.  insanity, or as designated in the older books, causes due to the "act of God", do not affect the rights of the parties to most contracts, yet engagements to render services of a personal nature, which can not be performed by deputy, successor or representative, within the meaning of the contract, are ended by the death, serious sickness or insanity of the party bound to render such services, and an action will not thereafter lie for specific performance of such contract, or for damages for the breach thereof. 3 Page, Contracts §§1364, 1365; *Spalding* v. *Rosa* (1877), 71 N. Y. 40, 27 Am. Rep. 7; *Hubbard* v. *Belden* (1855), 27 Vt. 645; *Yerrington* v. *Greene* (1863), 7 R. I. 589, 84 Am. Dec. 578; *Parker* v. *Macomber* (1893), 17 R. I. 674, 24 Atl. 464, 16 L. R. A. 858; *Steward* v. *Loring* (1862), 87 Mass. 306, 81 Am. Dec. 747; *Harrington* v. *Fall River. Iron Works Co.* (1875), 119 Mass. 82; *Trammell* v. *Vaughn* (1900), 158 Mo. 214, 59 S. W. 79, 81 Am. St. 302, 51 L. R. A. 854; *Lacy* v. *Getman* (1890), 119 N. Y. 109, 23 N. E. 452, 16 Am. St. 806, 6 L. R. A. 728; *Taylor* v. *Caldwell* (1863), 32 L. J. 164, 167; *Dolan* v. *Rodgers* (1896), 149 N. Y. 489, 44 N. E. 167; *Sanders* v. *Coleman* (1899), 97 Va. 690, 34 S. E. 621, 47 L. R. A. 581; *Scully* v. *Kirkpatrick* (1875), 79 Pa. St. 324, 332, 21 Am. Rep. 62; *Johnson* v. *Walker* (1892), 155 Mass. 253, 29 N. E. 522, 31 Am. St. 550; *Powell* v. *Newell* (1894), 59 Minn. 406, 61 N. W. 335; *Marvel* v. *Phillips* (1894), 162 Mass. 399, 38 N. E. 1117, 44 Am. St. 370, 26 L. R. A. 416. Either party to such contract for personal services is relieved from further performance under the contract, or from liability for breach thereof, by the

death, insanity or continued sickness of the other. *Yerrington* v. *Greene, supra,* 594, 595; *Taylor* v. *Caldwell, supra; Hubbard* v. *Belden, supra; Dolan* v. *Rodgers, supra; Blakely* v. *Sousa* (1900), 197 Pa. St. 305, 47 Atl. 286, 80 Am. St. 821.

The foregoing propositions are not controverted by appellant, but he contends that under the finding of the court, the rendition of the services by Butler in building up the trust department of said company was a material part of the consideration moving to him for the execution of the contract and sale of stock; that in parting with stock worth $17,500 for $10,000 he paid in advance for the rendition of services contemplated by the contract which were of great value to him; that notwithstanding the contract, as such, was annulled by the "act of God", or the insanity of said Butler, still appellant is not without remedy; that in such case the contract may be rescinded, either on the ground of mutual mistake as to the health and ability of Butler to carry out his part of the agreement, or for failure of consideration. Also, that on such facts he is entitled to recover the value given to Butler in pursuance of the contract, in excess of that given by Butler in money and services.

While in early times entire contracts were strictly construed, under the more modern doctrine it has been held that where parties enter into an entire special contract for a stipulated compensation and it is partly performed, but before completion, one of the parties dies, or without his fault performance is rendered impossible, there is no liability upon the contract. But where though acting under such contract, one of the parties has done for or delivered to the other party something of value, which he has accepted, the party so benefited is responsible on an implied promise, arising from the circumstances under the *quantum meruit,* to the extent of the net value received by him, not exceeding the contract price or compensation fixed by the special contract.

Likewise in special contracts of hiring for a particular

service or definite term, the sickness of the employe of considerable duration incapacitating him for the contemplated service, will relieve both parties from the contract, and the employe may recover on the *quantum meruit* for the value of the service rendered, not exceeding the contract price, and the employer may in such event treat the contract as ended and be relieved from payment for the full term, or according to the provisions of the special contract. ( Unless such contract evidences a clear and definite intention of the parties, to deny any compensation except upon full and strict performance, such agreements are regarded as conditional contracts, implying that inability, from sickness or like misfortune, to perform the services, or to do the things required by the contract, will afford sufficient excuse for nonperformance by either party to such agreement.. *Coe* v. *Smith* (1853), 4 Ind. 79, 58 Am. Dec. 618; *Parker* v. *Macomber, supra; Dolan* v. *Rodgers, supra; Johnson* v. *Walker, supra; Clark* v. *Gilbert* (1863), 26 N. Y. 279, 84 Am. Dec. 189; *Griggs* v. *Austin* (1825), 20 Mass. 20, 15 Am. Dec. 175; *Spalding* v. *Rosa, supra; Allen* v. *McKibben* (1858), 5 Mich. 449; *Levy* v. *Caledonian Ins. Co.* (1909), 156 Cal. 527, 105 Pac. 598.

Mutual mistake of the parties as to some material fact which entered into the agreement, is generally made ground for reforming a contract to the end that it may be enforced in accordance with the actual agreement of the parties which the writing does not express. Mistake of the parties as to such fact, in some exceptional cases, has been held sufficient to enable the injured party to rescind the contract, though as a ground for rescission the doctrine is not of general application. *Koons* v. *Ferguson* (1865), 25 Ind. 388, 391; *Garrett Co.* v. *Halsey* (1902), 38 Misc. 438, 77 N. Y. Sup. 989, 991; *Moffett, etc., Co.* v. *Rochester* (1899), 178 U. S. 373, 20 Sup. Ct. 957, 44 L. Ed. 1108; Bispham, Equity §191.

The failure of consideration contended for by appellant,

is the failure of Butler to render all the services contemplated by the contract. Such failure is not ordinarily ground for the rescission of a contract, but where both parties can be placed in *statu quo,* a party not in default, who has returned, or tendered, to the other party all of value that he has received under the contract, may in certain instances enforce rescission, or abandonment of the contract, for failure of consideration which results from a failure to perform the conditions of the contract. 24 Am. and Eng. Ency. Law (2d ed.) 644 *et seq.; Joest* v. *Williams* (1873), 42 Ind. 565, 13 Am. Rep. 377; *Calhoun* v. *Davis* (1851), 2 Ind. *532, *535; *Stewart* v. *Ludwick* (1867), 29 Ind. 230, 235; *Colson* v. *Smith* (1857), 9 Ind. 8, 9, 12; *Bonner* v. *Herrick* (1881), 99 Pa. St. 220, 225.

But notwithstanding the correctness of these general propositions of law, invoked by appellant, the further question remains to be considered, whether, on the facts of this case, any of said propositions are available to give appellant the relief he demands. As between Williams and Butler the contract is entire and not separable into two agreements, one for the sale of stock and the other for services. It is apparent that both parties bound themselves to do certain things in relation to the directors, officers and policies of the Farmers Trust Company, that belonged to all the stockholders and directors of the company, but there is no claim that anything wrong or detrimental to the company was contemplated, and the finding shows that the contract was made with the knowledge and consent of the stockholders and directors and would have been beneficial to the company if carried out as contemplated. The contract evidences an effort on the part of both Williams and Butler to so arrange the directorate and officers of the company as to inspire confidence and secure the highest possible efficiency. This part of the contract was fully executed by the parties and the things to be done by the company were carried out in every particular as set forth in the contract.

The contract in dealing with questions belonging to the stockholders and directors of the company, is somewhat peculiar. If severable at all, it is into an agreement between Williams and Butler as to the sale of stock and the union of their efforts in a common enterprise for the benefit of both, and on the other hand an arrangement between Williams and Butler on one side, and the stockholders and directors of the corporation on the other, relating to the directors, officers and certain policies of the company, which by action of the directors and stockholders of the corporation, at the time the cause of action in favor of appellant is alleged to have arisen, had become an executed contract, or consummated arrangement. For this reason we do not think such matters have a controlling effect in this case. Whether the contract be treated as a unit or as severable as above indicated neither party to this suit can justly claim or assert either benefit or harm by reason of those provisions. As the contract was made with the knowledge and consent of the stockholders and officers of the company and was beneficial to it, it does not fall within the class of contracts relating to corporations that are held to be against public policy.

The 16th finding shows that when the contract was entered into "it was the mutual expectation and intention of said plaintiff and the said Butler that the connection and employment of the said Butler and the association of the plaintiff and said Butler together, and the work thereof, in the upbuilding and management of the business of said Farmers Trust Company, should continue for an indefinite period of more than one year." The finding, therefore, does not show that Butler agreed with appellant, to render services for the trust company, as set out in the contract, for any definite and specified term, but that "it was the mutual expectation and intention" of the parties that their business relations as set forth in the contract "should continue for an indefinite period of more than one

year.'' Mutual expectation and intention is not the equivalent of a positive agreement for a definite term, or a particular thing. In the cases where the *quantum meruit* rule has been applied when full performance of an entire special contract, for personal services, or the like, has been rendered impossible, by ''the act of God'', the term of the service or the thing to be done, was definite. The fact that the parties intended and expected the arrangement to continue for an indefinite period of more than one year does not make the contract definite for one year or for any definite period of time. Expectation and intention operate in many cases as an inducement to enter into a contract, but are usually quite distinct from the consideration or other definite and binding provisions of the agreement. In *Levy & Cohn Mule Co.* v. *Kauffman* (1902), 114 Fed. 170, 174, 52 C. C. A. 126, the court said: ''There is a clear distinction sometimes between the motive that may induce to entering into a contract and the consideration of the contract. Nothing is consideration that is not regarded so by both parties. It is the price voluntarily paid for a promisor's undertaking. An expectation of results often leads to the formation of a contract, but neither the expectation nor the result, is 'the cause of meritorious occasion requiring a mutual recompense in fact or in law.' *Philpot* v. *Gruniger* [1871], 14 Wall. 570, 577, 20 L. Ed. 743; *Morris* v. *Norton* [1896], 75 Fed. 912, 926, 21 C. C. A. 553; *Peck Colorado Co.* v. *Stratton* [1899], (C. C.) 95 Fed. 741, 744; *Fire Ins. Assn.* v. *Wickham* [1891,] 141 U. S. 564, 579, 12 Sup. Ct. 84, 35 L. Ed. 860.'' If the contract between appellant and Butler, had fixed a definite term during which the services stipulated in the contract were to continue, the case might be brought within the *quantum meruit* rule, on the theory of those cases in which the rule has been applied to give relief where one of the parties to an entire contract for a definite period of service or for some specific undertaking, became incapable of fully performing it on account of serious sickness or other

causes beyond his control. *Krause* v. *Board, etc.* (1904), 162 Ind. 278, 284, 70 N. E. 264, 102 Am. St. 203, 65 L. R. A. 111, 1 Ann. Cas. 460. But where, in such contract, the time is indefinite there is no basis for an implied obligation and an apportionment of benefits on an equitable basis, and it will be presumed that each party to such contract when entering into it, took the chances incident to those unforeseen happenings which, in technical phrase, are said to be due to "the act of God".

In entering into an entire contract for personal services, or the like, nothing appearing to the contrary, the parties will be presumed to have taken their chances on the results that may flow from such unforeseen events as are due to the "act of God", and unless there be a definite stipulation for the period of service, or the thing to be done, or some other provision of the contract, clearly indicating an intention of the parties to provide some remedy to compensate for losses that may result from such happenings, the law will not by implied conditions of the contract, or otherwise, provide a remedy to the party that may suffer loss by reason of such unforeseen events. *Krause* v. *Board, etc., supra; Barney* v. *Indiana R. Co.* (1901), 157 Ind. 228, 231, 61 N. E. 228; *Marvel* v. *Phillips, supra; Ayres* v. *Dutton* (1891), 87 Mich. 528, 49 N. W. 897, 898, 13 L. R. A. 698; *Hodgson* v. *Jeffries* (1876), 52 Ind. 334, 338; *Joseph* v. *Wild* (1896), 146 Ind. 249, 256, 45 N. E. 467. There was mutual expectation of long continued association and services on behalf of both parties. Each knew of the possibilities of death, sickness or other misfortunes that might intervene to prevent the ultimate consummation of their plans, but they did not see fit to bind each other to a definite term of service or to provide a remedy for either in case the other was overtaken by a misfortune beyond his control which might render performance of the contract impossible on his part. To attempt to apply the equitable rule

would bring us at once face to face with uncertainty as to what would be the equitable basis of adjustment in view of all the facts of this case. The case does not therefore come within the *quantum meruit* rule.

What we have said in relation to the presumptions in regard to the results due to an "act of God", and the absence from the contract of any provisions relating 9. thereto, applies with equal force to the proposition of rescission either upon the ground of mutual mistake of the parties as to the health of Butler, or as to the failure of consideration based upon his inability to render the contemplated services, due to causes beyond his control.

The court did not err in its conclusions of law. We have examined the questions presented under the motion for a new trial and find no reversible error.

This case, in one view, presents a strong equitable claim on the part of appellant. On the other hand, it is plain that the parties in good faith entered into a mutual arrangement for the financial advantage of each and the contract evidences no intention to make provision for the adjustment of losses that might result from failure of health, death, or like misfortunes. The heavy hand of affliction fell upon Mr. Butler but it might have fallen on Mr. Williams. Each took the chances of health and ability to continue the work of the joint enterprise. They provided no remedy for the other party, if either, without his fault became incapable of performing his part of the contemplated services, and the law, on the facts of this case, leaves each party where the unfortunate event placed him.

We find no reversible error in the record. Judgment affirmed.

Ibach, P. J., Lairy, Caldwell, Hottel and Shea, JJ., concur.

## ON PETITION FOR REHEARING.

FELT, J.—The appellant earnestly insists that the court erred in holding in the original opinion that the contract and finding of facts do not show that Butler was bound to render services for any definite period of time and in failing to set out in the opinion all of the facts which tend to show that the contract was for a definite period of at least one year. The contract provides, and the court found, that certain named persons were to be elected directors of the company at the annual meeting to be held on June 11, 1906, "for the ensuing year", among whom were C. N. Williams and John A. Butler; that "the officers of the company for the year 1906-7 shall be as follows: Pres.—C. N. Williams, First Vice-Pres. & Treas.—John A. Butler"; that the meeting was duly held and the officers and directors named in the contract were all elected for the terms specified in the contract and each entered upon the discharge of his respective duties as therein designated.

The court's finding No. 16 is as follows: "That at the time of entering into said contract, as set out. and found in the finding numbered '4' herein, it was the mutual expectation and intention of the said plaintiff and the said Butler that the connection and employment of the said Butler and the association of the plaintiff and said Butler together, and the work thereof, in the upbuilding and management of the business of said Farmers Trust Company should continue for an indefinite period of more than one year, and had the said Butler been and continued in such health as to enable him to perform such duties the said plaintiff continuously stood ready and willing to continue such connection, association and employment of said John A. Butler in said position for an indefinite period of more than one year."

The decision is based upon the facts shown by the briefs and record. There was no admission or agreement of the

parties that in any way changes or modifies the facts so shown or affects the ultimate conclusion reached.

We have again considered the controverted propositions in the case and the authorities cited, but are unable to agree with the contention of appellant's distinguished counsel, that the original agreement of the parties and the finding of facts show that Mr. Butler was to render the services provided for in the contract for the definite period of one year. We see no discrepancy between the provisions of the contract and the findings. The conclusion reached is not due to any oversight of material facts or to any failure to consider all the facts having any bearing upon the questions presented. The view which this court takes of the meaning and effect of the contract and finding of facts is not in accord with that expressed by appellant's able counsel. The importance of the questions presented has not been overlooked and they have been duly considered by the court.

That there may be no misunderstanding of the basis of the decisions or the conclusions reached we have set out more in detail than appeared in the original opinion the facts relating to the term of service of Mr. John A. Butler. But with the conclusions reached we are still content, and for that reason the petition for a rehearing is overruled.

NOTE.—Reported in 105 N. E. 387; 107 N. E. 300. As to causes and proceedings for reformation of instruments, see 65 Am. St. 481. As to termination of contract of employment by the death of one of the parties, see 23 L. R. A. 707; 5 L. R. A. (N. S.) 1002; 21 L. R. A. (N. S.) 914; 39 L. R. A. (N. S.) 1187. As to right to recover for services interrupted by sickness or death, see 16 L. R. A. 858. As to mutual mistake as ground for reformation of written instruments, see 3 Ann. Cas. 444. As to rescission or cancellation of instrument for negligent mistake of one party, see Ann. Cas. 1913 A 432. As to rights and liabilities of parties to contract of employment where servant dies during term of service, see 17 Ann. Cas. 182. See, also, under (1) 9 Cyc. 631; (2, 3, 7) 9 Cyc. 688; (4) 9 Cyc. 397; 34 Cyc. 908; (5, 8, 9) 9 Cyc. 631.