JONES, PERSONAL REPRESENTATIVE, ETC. *v.* SERVEL, INC.

[No. 19,580. Filed December 13, 1962. Rehearing denied January 17, 1963. Transfer denied October 8, 1963.]

*George P. Ryan, Alan H. Lobley, Ross, McCord, Ice & Miller,* of counsel, all of Indianapolis and *Bamberger, Foreman, Oswald & Hahn,* of counsel, of Evansville, for appellant.

*Isidor Kahn, Harry P. Dees, Kahn, Dees, Donovan & Kahn,* of counsel, of Evansville, *Carl M. Gray, Gray & Waddle,* of counsel, of Petersburg, *William T. Caldwell* and *Brown, Wood, Fuller, Caldwell & Ivey,* of counsel, of New York, N. Y., for appellee.

BIERLY, J.—The personal representative of the Estate of W. Paul Jones, deceased, brought this action against

appellee, Servel, Inc., to obtain judgment for an alleged sum due on a contract entered into by and between W. Paul Jones and the appellee.

Subsequent to the action of the trial court in sustaining demurrers filed by defendant to each of three paragraphs of plaintiff's amended complaint, the plaintiff chose to stand on the three paragraphs of her amended complaint, thereby refusing to plead over within the time designated by the court. Whereupon, the court entered judgment for the defendant on each paragraph of the amended complaint.

It is from this judgment that this appeal arose.

Error charged by appellant in her assignment of errors in seeking a reversal of this cause is error by the court in sustaining the demurrer to each of the three paragraphs of plaintiff's amended complaint.

The contract referred to in the first paragraph of this opinion was filed by copy, attached to and made a part of plaintiff's amended complaint as Exhibit A. Said exhibit is as follows, to-wit:

"SERVEL INC.
"51 EAST 42ND STREET
"NEW YORK 17, N. Y.
"Cable Address "SERVEL INC"
"September 9, 1954

"W. Paul Jones, Esq.
"Evansville 20, Indiana
"Dear Mr. Jones:

"Referring to your proposed retirement as President and principal executive officer of this Corporation, this Corporation is desirous of retaining, for a period of one year from the date hereof (hereinafter called the "employment period"), your services on the basis outlined below, and you have indicated your willingness to remain in our employ for such period on such basis:

"(1) You will, as and when requested by the Corporation at any time or times during the employment period, act in an advisory capacity and as consultant to this Corporation and any of its subsidiaries in connection with any matters relating to the business and affairs of said corporations, it being understood that you will hold yourself available to render the services which are required of you hereunder and will not engage in any other business or activities (and, in no event, will engage in any business from which you are precluded by the provisions of paragraph (3) hereof), or maintain a place of residence, which in any case unreasonably interferes with performance by you hereunder, it being understood you may continue your connection with Kellett Aircraft Corporation so long as you receive no substantial amount of compensation from such corporation.

"(2) You will serve during the employment period as a member of the Board of Directors (and/or as a member of any committee thereof) and/or as an officer of this Corporation and/or any of its subsidiaries, if elected to such office or offices during such period, without any compensation other than as specified in paragraph (4) hereof and other than such director's fees, if any, as may be paid to you and reimbursement of your out-of-pocket expenses in connection with attendance at directors' meetings.

"(3) You agree that during the employment period you will not, without the prior consent of this Corporation, acquire, or hold, /LRW.P.J. any substantial interest as a stockholder, director or agent or otherwise in or for any person, firm or corporation competing with this Corporation or any subsidiary thereof or engaged, directly or indirectly, in any business competing with that of this Corporation or any subsidiary thereof or use your influence or experience in the interests of any such competing person, firm, corporation or business.

"(4) As full compensation for the obligations assumed and/or for any and all services rendered by you as herein provided, this Corporation agrees to pay you during the employment period a salary at the rate of $75,000 per annum, payable in

equal monthly installments. In case you, in the performance of services requested of you hereunder, shall incur out-of-pocket expenses such as traveling expense and the like, this Corporation will reimburse you for all such expenses reasonably incurred by you.

"(5) Nothing herein contained shall prevent or preclude you from participating in, and as such participant receiving payments under, this corporation's Profit-Sharing Plan as embodied in its Agreement, dated as of November 1, 1952, with the Hanover Bank, as Trustee.

"(6) The employment period may be terminated at any time by you, on thirty days written notice to this Corporation, in which case you shall receive compensation at the rate provided in paragraph (4) hereof only to the date of such termination.

"Please confirm that you are willing to accept employment by this Corporation on the basis outlined above by signing, at the place provided below for that purpose, the original and duplicate of this letter and returning the duplicate to this Corporation.

"Very truly yours,
"SERVEL, INC.
"By /s/ Louis Ruthenburg
"Chairman of the Board

"Accepted as of the date first above written.
"/s/ W. Paul Jones
"W. Paul Jones"

Allegations common to the three paragraphs of the amended complaint may be stated as: (1) The legal capacity of the contracting parties to enter into an agreement or contract; (2) The death of W. Paul Jones, one of the contracting parties on January 29, 1955, following the execution of the contract effective September 9, 1954; (3) That W. Paul Jones received payment of $25,000 on said contract prior to death, and said Jones was to be and was paid at the rate of $6,250.00

per month; and (4) That a balance due on said contract in favor of appellant was $50,000, which appellee refused to pay.

In the first paragraph of plaintiff's amended complaint, it is further alleged that W. Paul Jones "fully performed all the obligations he assumed under the contract prior to his death."

According to numerical paragraph (2) of the contract it was an obligation of plaintiff's decedent to stand ready and maintain a willingness to perform services when requested by appellee. Was it possible for the decedent, Jones, to deliver full performance of his obligations he agreed to perform, even though he was deceased on January 20, 1955, which date was approximately four months and eleven days following execution of the contract? It was alleged in the first paragraph of plaintiff's amended complaint that full performance of obligations assumed by the decedent in compliance with numerical paragraphs (2) and (3) of the attached contract, was effected by appellant's decedent. Did the death of Jones render impossible the satisfaction of all obligations assumed by the decedent in the contract? Our duty is to determine whether the first paragraph of the amended complaint can withstand a demurrer addressed to it. It is a well grounded rule of law that recovery may be had only by a plaintiff upon the theory of his complaint. *Glendenning* v. *Cowan* (1915), 59 Ind. App. 529, 109 N. E. 844.

Plaintiff alleges in this paragraph of the amended complaint full performance of the contract by Jones even though it is asserted that Jones lived only approximately four months after the effective date of the contract. Since the Exhibit "A," to-wit, the contract calls for a yearly basis of its duration,

there ensues a contradiction which produces a repugnancy in the complaint and thereby renders this paragraph vulnerable to a demurrer. *Chicago, etc., R. Co.* v. *Barker* (1908), 169 Ind. 670, 83 N. E. 369; *Barber and another* v. *Summers* (1840), 5 Blackford 339.

Appellant alleges in rhetorical paragraph 4 of this amended paragraph of her complaint that:

"4. Plaintiff's decedent, W. Paul Jones, fully performed all the obligations he assumed under the contract prior to his death,"

and interprets the term "and/or" as used in paragraph (4) of the contract may mean either the obligation not to complete as expressed in paragraph (3) of said contract or the obligation to hold himself in readiness to perform any or all services set forth in paragraph (1) of said contract, and hence he would be entitled to full compensation for performing either. The appellee earnestly argued the fallacy of appellant's interpretation of the term "and/or."

We quote from Black's Law Dictionary, Fourth Edition, at page 112, as follows:

"When expression 'and/or' is used, that word may be taken as will best effect the purpose of the parties as gathered from the contract taken as a whole, or, in other words, as will best accord with the equity of the situation. *Bobrow* v. *U. S. Casualty Co.*, 231 App. Div. 91, 246 N. Y. S. 363, 367."

It is quite obvious that Jones and Servel, Inc., did not intend that Jones should be fully compensated for performing either of his obligations in the alternative. Else Jones during his lifetime could have defaulted on one and expected full payment for the performance of the other. Therefore, the expression "and/or" can only be interpreted as a conjunc-

tive in this case and the appellant's argument that it should be interpreted in the alternative is completely without merit, and no error was committed by the trial court in sustaining appellee's demurrer to said first paragraph of complaint.

In the second paragraph of plaintiff's amended complaint, an allegation is made to the effect that appellee waived any further right to services by appellant's decedent and hence when a completion of the covenant not to compete was accomplished, which occurred at the death of Jones, the appellant was entitled to the contract price in its entirety. We think this theory may be capable of possessing merit, provided the covenant not to compete survives the death of the covenantor.

If the personal service clause in the contract and the covenant contained therein not to compete are personal services contracts in the sense that they terminate on death, the appellant would have no action regardless of the merits of his contention thereto.

We quote from 6 Corbin, *Contracts*, §1335, p. 379, (1961), which reads as follows:

"The death of an employee who has contracted to render personal services also discharges the employer from further duty, except the duty of making compensation for services already received. He is not bound to receive or to pay for services offered by the employee's executor or other substitute."

We think this is a clear statement of the law in this state. *Williams* v. *Butler* (1914), 58 Ind. App. 47, 105 N. E. 387; *Miller* v. *Ready* (1915), 59 Ind. App. 195, 108 N. E. 605; 12 West's Indiana Law Encyclopedia, *Employment*, §11, p. 22 and cases cited.

Is the covenant not to compete in the case at bar such a personal contract and as such would it fall within the above rule?

In his argument, the appellant attempted to challenge this line of thought by showing that the appellee received all it bargained for in the covenant. Inasmuch as this second paragraph of the amended complaint is based on the contract and not on *quantum meruit,* the question under consideration is not primarily whether the appellee received a benefit but whether the appellant's decedent performed his obligation. *Forester* v. *Forester* (1894), 10 Ind. App. 680, 38 N. E. 426; *Davis* v. *Chase* (1902), 159 Ind. 242, 64 N. E. 88; *Indianapolis Real Estate Board* v. *Willson* (1933), 98 Ind. App. 72, 187 N. E. 400.

In an early Indiana case entitled *Taylor* v. *Owen and Others* (1830), 2 Blackford's 301, the court stated that a covenant not to allow competition was in nature a personal relationship and could not be enforced against the land of the covenantor. It is our opinion that this interpretation is applicable to the case at bar as the covenant not to compete obviously could not be assigned by the covenantor nor could the covenantee enforce the covenant against the personal representative of the decedent. The fact that the appellant's decedent could not breach his covenant after death has no bearing on the question raised herein as this action is founded upon contract and primarily we are concerned not with the ultimate benefits reaped by the appellee, but with the performance of appellant's decedent.

We are apprised with the situation that courts of foreign jurisdiction are divided on the issue of a covenant not to compete being personal. The court in the case of *Ulman* v. *Sunset-McKee Co.* (1955), 221 F. 2d 128, held that a three year pension with a covenant not to com-

pete would not be terminated on the death of the pensioner. In the case of *In re: International Match Corporation* (1937, D.C. N.Y.), 20 Fed. Supp. 420, the Court held that a covenant not to compete was personal in nature and the death of the covenantor would limit his claim. These cases involved the substantive law of different states and thus do not lend themselves as being authoritative in Indiana law.

Thus, since we conclude that in the case at bar, the covenant not to compete and the employment contract were of such a personal nature that they terminate at death, the demurrer to the amended second paragraph of complaint was properly sustained.

Apparently the parties treated and considered the third paragraph of the amended complaint as counting upon an implied contract for reasonable services. Therefore, we shall likewise treat and consider the same as alleging upon an implied contract. Appellant proceeded upon the theory that he is entitled in an action in *quantum meruit* for recovery of the reasonable value of the services performed by W. Paul Jones.

This contention of appellant is challenged by the appellee by arguing that the contract embodies the whole agreement between the parties and appellant should be frustrated in his attempt to vary the scope and terms of the contract, by submitting parol evidence. Appellee asserts that the correct interpretation of paragraph (4) of the contract insofar as compensation to Jones was payable in equal monthly installments demands that said compensation was required to be also earned in equal monthly installments, and it was the intent of the parties that the contract price was to be earned in equal monthly installments.

Appellee apparently appears to have failed to recognize appellant's theory of this paragraph of the amended complaint as an action on *quantum meruit* rather than an express contract. The case at bar involves a situation closely analogous with the fact situation in the case of *Williams* v. *Butler, supra.* At page 55, this court held:

"While in early times entire contracts were strictly construed, under the more modern doctrine it has been held that where parties enter into an entire special contract for a stipulated compensation and it is partly performed, but before completion, one of the parties dies, or without his fault performance is rendered impossible, there is no liability upon the contract. But where though acting under such contract, one of the parties has done for or delivered to the other party something of value, which he has accepted, the party so benefited is responsible on an implied promise, arising from the circumstances under the quantum meruit, to the extent of the net value received by him, not exceeding the contract price or compensation fixed by the special contract."

The appellee takes issue with appellant's right of recovery upon the basis of the rule stated above. Exception by appellee is taken especially to the last sentence quoted as not being applicable to the contract. In paragraph (4) of the contract, the clause fixing compensation reads "this corporation agrees to continue to pay you during the employment period a salary at the rate of $75,000.00 per annum, payable in equal monthly installments," and thence in paragraph (6) the appellant's decedent is allowed to terminate the contract at will "in which case you shall receive compensation at the rate provided in paragraph (4) hereof only to the date of such termination." The appellee reasons that these above quoted clauses limit the appellant's recov-

ery under the *quantum meruit* to the maximum amount of a monthly rate of $6,250.00; that since appellant's decedent has received for the four months decedent lived, the sum of $25,000.00, the appellant, in accordance with the rule set forth in *Williams* v. *Butler, supra,* is denied recovery of any additional sum from appellee.

It would appear that the crux of this question presented revolves about the construction of the contract to determine whether a monthly rate or a yearly rate is dominant.

The contract provides payment be made in equal monthly installments. Since the contract was in effect as of September 9, 1954, the fourth monthly payment was due and payable on January 9, 1955. Are we subject to an inference that Jones was not entitled to any renumeration for the period from January 9, 1955, to the date of his death on January 20, 1955? Or had Jones died, say on January 8, 1955, are we subject to an inference that appellee was not liable for the payment of any part of the fourth monthly payment?

Evidently the trial court interpreted the contract as creating employment of Jones on a monthly basis and hence limited compensation for Jones for a period of four months. It is clearly expressed in paragraph (4) of contract that the employment period was indefinite but at a rate of $75,000.00 per annum "payable in equal monthly installments;" that employment by provision of said contract in paragraph (4) "may be terminated" at any time by Jones subject to a 30 day notice to that effect to the appellee, and should termination be requested, Jones would be paid "at the rate of $75,000.00 per annum, payable in equal monthly installments," as provided in paragraph (4) "only to the date of such termination, as provided in paragraph (6) of said contract."

The death of Jones precluded the application of a voluntary termination of the contract within the year. The contract made no provision relative to the death of Jones within the year as to compensation.

The third paragraph of the amended complaint was not a call for a declaratory judgment following a petition for a construction of the contract but as heretofore stated an action on *quantum meruit*. So any ambiguity in the terms of the contract should be submerged in favor of a determination as to what compensation, if any, was yet due appellant by a proper submission of the cause to the court or jury for determination on the issue on *quantum meruit*.

The rule under *quantum meruit* heretofore stated leads us to state that its application to the case at bar is timely and that appellant was entitled to the submission of this issue, which was not done by the ruling in sustaining defendant's demurrer.

We hold the trial court should have overruled the tendered demurrer to the third paragraph of the amended complaint.

The sustaining of the separate demurrers to the first and second paragraphs of the amended complaint is hereby affirmed while the ruling of the trial court in sustaining the demurrer to plaintiff's third paragraph of the amended complaint is hereby reversed.

Judgment affirmed in part and reversed in part.

Said cause is hereby remanded to the Circuit Court of Pike County for further proceedings consistent with this opinion.

Gonas, P. J., and Pfaff, J., concur; Kelley, J., concurs in result.

NOTE.—Reported in 186 N. E. 2d 689. Transfer denied, Landis, Acting C. J., Myers, J., not participating, Achor, J., dissents.