GEORGE E. THOMPSON AND JOSIAH THOMPSON v. WILLIAM H. ANDRUS ET AL.

*Contract—Restraint of trade—Equity—Injunction.*

1. A contract made by a merchant with a purchaser of his stock of goods, and of the good-will of the business, not to engage in the same kind of business in the same town for a stated period, is legal and binding; and upon the facts of this case,

as stated in the opinion, it is held that the action of the defendant Cornelia N. Andrus, in opening a hardware store ostensibly in her own name, but really managed by her co-defendants (who had made such an agreement with the complainants), was in fraud of complainants' rights, which will be protected by injunction.

2. Courts of equity look to the substance and effect of transactions involved in controversy, and will not be deceived by mere words or forms, when the conduct of the parties contradicts the forms and words used as a cover to their transactions.

Appeal from Shiawassee.　(Newton, J.)　Argued January 16, 1889.　Decided February 1, 1889.

Bill to enjoin defendants from engaging in the hardware business. Decree dismissing bill reversed, and one entered as prayed. The facts are stated in the opinion.

*Lyon & Hackleman,* for complainants, contended :

1. The court will look no further than to see that the restraint of trade is reasonable and consistent with the law, and that there is a legal consideration to support the contract; citing *Pierce v. Fuller,* 8 Mass. 233; *Pike v. Thomas,* 7 Am. Dec. 741, and notes; *Hubbard v. Miller,* 27 Mich. 15; *Beal v. Chase,* 31 Id. 520; *Doty v. Martin,* 32 Id. 462: *Grow v. Seligman,* 47 Id. 607; *Timmerman v. Dever,* 52 Id. 34; *Myers v. Buggy Co.,* 52 Id. 215.

*S. F. Smith,* for defendants, contended :

1. Contracts in restraint of trade cannot be held valid beyond the legitimate scope of the business; citing *Beal v. Chase,* 31 Mich. 491; *Hubbard v. Miller,* 27 Id. 15.

2. None of the defendants have violated any contract with the complainants, and the new stock of goods and business are sole and exclusive property and business of Cornelia N. Andrus who has the legal right to carry on the same; citing Const. Mich. Art. 16, § 5; How. Stat. § 6295, and notes.

3. The alleged contract was without consideration, and, being against public policy, is void; citing *Hubbard v. Miller,* 27 Mich. 20; *Beal v. Chase,* 31 Id. 518, 522.

CHAMPLIN, J.　In February and March, 1886, William H. Andrus was engaged in carrying on what is called the

"hardware business," which included dealing in stoves and tinware, at the city of Owosso, Mich. Charles J. Andrus, his son, was employed by him as a clerk in the store, and his daughter, Kitty Andrus, was his book-keeper. He had been engaged in the hardware business at that place since 1871, and had a large and profitable class of customers. He had stated that he wanted to sell out his business and stock of goods, and remove west, on account of his health, and to look after interests he claimed to have west. His son, Charles J., was an active, energetic young man of about 25 years of age, and did most of the business in the store; and his father, William H., had talked of turning the entire stock and business over to this son, in contemplation of which the son had ordered some goods in his own name for future delivery.

The complainant Josiah E. Thompson, then residing at South Bend, Ind., had heard of the desire of Mr. Andrus to sell, and in the month of February, 1886, visited Owosso, and entered into negotiations for the purchase of the stock of goods, which resulted in Mr. Thompson's returning again, about March 4, when a definite arrangement was made for the purchase by said Josiah Thompson for himself and nephew, George E. Thompson. The sale was closed up on March 12, and the purchase price, $4,887.71, paid over to William H. Andrus. A formal bill of sale was executed March 12, 1886. The purchase by complainants also included the good-will of the business; and said William H. Andrus, in consideration of the purchase money so paid, agreed that he would not engage in the business of selling general hardware, stoves, and tinware in the city of Owosso in the space of 10 years next succeeding said date; and said Charles J. Andrus also agreed, in consideration of one dollar, the receipt whereof was acknowledged, that he would not engage in the business of selling general hardware, tinware, and stoves, as prin-

cipal in said business, in the city of Owosso, for the term of 10 years from March 12, 1886.

On May 4, 1887, there appeared in the Owosso Weekly Press, a paper published and circulated in the city of Owosso and vicinity, a display advertisement as follows:

"Everything will be ready for a genuine boom, boom, boom, next Saturday, May 7, continued for sixty days. Having purchased an entire new stock of hardware at eastern manufacturers' prices, I will be enabled to offer unprecedented bargains in every department, no matter what you may wish to purchase. If you want $1.25 value for every dollar, come to the new hardware, opposite Exchange Hotel.

"C. N. ANDRUS."

Also this:

"That new hardware establishment of C. N. Andrus will open next Saturday, and 'boom' is the word. Charles J. Andrus, the manager, knows just how to do it. See the ad. on the second page of this paper."

Other advertisements were inserted, calling attention of the public to the Andrus hardware store for bargains, which were published in succeeding issues of the paper, and on June 15, the following appeared:

"The Andrus hardware store makes new announcement, second page, about bargains and prices. Charley asks everybody to read it."

The announcement was as follows:

"Read this. Don't miss it. You will save money if you are going to need any article of hardware. Don't make a purchase until you have learned our prices. Examine the best, cleanest, and newest stock in the city. You will have the chance of selecting goods of the latest style from leading manufacturers, at lower prices than offered elsewhere. Others acknowledge it. Our trade denotes it. If you want screen doors complete for $1.20, why pay $1.40? If you want the best adjustable window screen made, you can get it for 35 cents. Be convinced that all new, clean goods can be bought for 25 per cent. less money. Get their prices, and we will go lower. Close

purchasing allows us to do it, and enables us to retail a great many goods at a price less than some concerns pay. (We know it.)  These facts can be substantiated at the new hardware of C. N. Andrus, opposite Exchange Hotel, Owosso."

Similar advertisements appeared in the Owosso Times, a weekly newspaper published in Owosso, inviting the public to trade at Andrus' hardware store, opposite the Exchange Hotel.  These advertisements were inserted by the defendant Charles J. Andrus.  A hardware store was opened about the middle of May, 1887, opposite the Exchange Hotel.  Over the door was the name of C. N. Andrus.  The business was managed and conducted by Charles J. Andrus.  The defendant William H. Andrus was in the store most of the time, and when Charles J. was absent at dinner he waited upon customers.  He also worked in the tin-shop some, and put up some tin eaves-troughs, but received no pay for his work.  The books were kept by Kitty Andrus.

The complainants filed their bill of complaint against William H. Andrus, Charles J. Andrus, and Cornelia N. Andrus, setting up the facts, and charging that said Charles J. and William H. Andrus have the whole charge and management of said business, and do all the business connected therewith, although they claim that the stock and business belongs to C. N. Andrus, and they are merely employés; that the said new stock of goods was purchased with the money paid by complainants for the stock they purchased, and the store and business is in fact the store and business of William H. and Charles J. Andrus, and the claim that the same belongs to and is carried on by C. N. Andrus is a mere pretense, and a scheme concocted by them to evade the terms of their said agreements with complainants.  The prayer of the bill is that said William H. Andrus, Charles J. Andrus,

and Cornelia N. Andrus may be perpetually restrained from, now and hereafter, during 10 years from March 12, 1886, carrying on the business of selling hardware, stoves, and tinware, either individually or associated with Cornelia N. Andrus, or in any other firm, copartnership, or corporation, by whatever name it shall be called, in the city of Owosso, Mich., and for general relief.

The defendants answered severally. William H. admits the sale of the stock and good-will, and the agreement not to engage in said business for 10 years in the city of Owosso. Admits that in May, 1887, a new hardware store was opened on Exchange street, about two blocks from complainants' store, which he is informed and believes is owned and carried on by Cornelia N. Andrus, and that said Charles J. is employed by her as a clerk and in the management thereof. Denies that he has an interest in the stock and business, and the charge and management thereof; and denies that the stock was purchased with money paid by complainants to the defendants. .

Charles J. Andrus admits the purchase by Thompson of the business, stock of goods, and good-will. He admits that notices and advertisements appeared in the newspapers printed and circulated in said city that C. N. Andrus would soon open a new hardware store on Exchange street, and soliciting custom, and offering inducements to customers. Admits that one of said notices stated that C. A. Andrus would open said store, and Charles A. Andrus would be the manager of it; and admits that the standing displayed advertisement of said store and business before and after it was begun was in the name and sign of C. N. Andrus, and that local and weekly notices of the business referred to said store as the "Andrus Hardware Store," and that customers were solicited to buy goods and leave orders at the "Andrus

Hardware Store." He denies that he and William H. Andrus have any business or property in the hands or under the control of said C. N. Andrus; and he denies that either William H. or himself has any interest or ownership in said business, or that it is carried on for the purpose of evading the provisions of any agreements.

The defendant Cornelia N. Andrus admits that about the month of April, 1887, she caused notices to be published and circulated in the city of Owosso that she would open a new hardware store on Exchange street, soliciting custom, and offering inducements to customers, and that such notices stated, in substance, that Charles J. Andrus' would act as manager of the store for her; but she denies that William H. Andrus was in any way connected with or concerned in the publication of said notices; and she says that neither William H. nor Charles J. has any interest in said stock of goods or business, and that she is the sole and absolute owner thereof; that she paid for said stock with her own individual money; that Charles J. is in her employ as clerk, to assist in and about said business.

The defense to the matters stated in the bill of complaint is based upon the proposition that Cornelia N. Andrus furnished the money from her own means, and embarked in the enterprise of running a competing hardware store in the city of Owosso of her own volition, and in opposition to her husband's wishes; that William H. Andrus has no interest therein, and Charles J. is employed merely as clerk. Mrs. Andrus testified:

"My husband wanted to go away, and sell out his business, and move out of town, and I tried to nerve myself to go west or anywhere he decided to go; but the more we talked about it the worse I felt about it, so I wrote to Charley to come home from Detroit. I was lonesome without him, and I told him, if he would come

home, I would start a business for him to go into, so I could have my family home, and not leave Owosso."

She further testified that she hired Charley to manage it, and gave him $70 a month, and boarded him; that the first thing she did about going into business was that she demanded her money to buy a stock of goods of William H. Andrus, and got it; that he did not object to her having it; that she got $3,000 on April 8, 1887, and went to Detroit, and took Charley with her, on April 17 or 18. Went to the Black hardware store, and engaged for a stock of goods. Talked with Mr. Black, and told him her financial condition, and told Charley to order the goods,—pick them out for her,—as he knew what was needed for a store better than she did. That it is now run by Cornelia N. Andrus, and Charles J. Andrus is her manager.

She explained the way in which her husband became indebted to her, as follows: Before she came to Michigan, in 1856, her mother had given her $600. She and her husband moved from Brooklyn, N. Y., to Owosso, in 1856, 1857, or 1858,—along there,—and Mr. Andrus bought a lot, and took the deed in her name. She used the money her mother gave her in paying for and improving the lot, and she and her husband resided on the lot. In 1867, Mr. Andrus bought another lot, and the title was conveyed to her. Improvements were made upon this lot, and they removed to it, and have resided upon it for many years. It is worth now $4,000. In 1871, her husband, having been burned out in the lumber woods, bought a stock of hardware goods, and engaged in the hardware business in Owosso. To enable him to purchase and pay for a stock of goods, which he purchased of a Mr. Gregory, she sold her house and lot first mentioned to Mr. Reed, in 1876, for $2,250, and loaned it to her husband to pay his debts, and he was to repay

it when he got on his feet again. At the time she demanded the money, she figured up the amount, and it came to $3,982.30. She was informed by her husband that he could not go into business again in Owosso for 10 years. It was admitted that the defendant William H. Andrus, on October 18, 1886, who had his account with M. L. Stewart & Co.'s bank, took a certificate of deposit in his own name for $3,000; that on April 8, 1887, he took up this certificate of deposit, and for the same money a certificate of deposit was issued to his wife, Cornelia N. Andrus, for $3,000.

We have stated enough of the facts appearing from this record to show where the equity of the case lies. The contracts entered into between the defendant William H. Andrus and complainants, and Charles J. Andrus and complainants, set forth in the bill, binding themselves not to engage in the hardware business,—the one in any manner, and the other as principal,—were legal and binding. That they have been violated, both in letter and spirit, any one who reads the record in this case will not have the shadow of a doubt. The public are solicited to trade at the Andrus hardware store; they are told that they can buy better and newer goods there at a less price than elsewhere; they are asked to get prices from other hardware stores, and they will sell them cheaper at the Andrus store. They were thus endeavoring to deprive complainants of the good-will which had attached to the business and name carried on by Andrus, and which he had conveyed to complainants. Customers entering the hardware store carried on under the name of C. N. Andrus would have found the same genial old gentleman to entertain them, and, if necessary, to wait upon them; the same active and energetic young man managing the business; the same daughter of Mr. Andrus keeping the books. Everything, so far as appearances were concerned,

was the same as the establishment was before the sale to complainants, except the new stand, the new goods, and the new sign, and that changed only in the initials. Had they investigated far enough, they would have found that the new goods were purchased with the money which up to the day of purchase belonged to defendant William H. Andrus. We cannot shut our eyes, and not observe all these facts and circumstances, and consider alone the testimony that Mr. Andrus was indebted to his wife, and merely paid a debt of long standing, and she had a right to invest her money as she chose, and to engage in any business she desired to. There are too many elements of bad faith surrounding the transaction. The evidence is too plain to be disputed that the money was handed over by the husband to the wife to enable William H. Andrus and his son to engage in the hardware business in the city of Owosso, under cover of her name, for the very purpose of avoiding liability on the contracts with complainants. It was thought that Charles J. could engage as manager because his contract provided that he should not engage in the business as principal. But the testimony shows that the words "as principal" were inserted at his suggestion, because, as it was written, he could not hire out as clerk, and he did not want to be cut off from employment as a clerk. The facts show that he is engaged in the hardware business as principal. Grant that the money embarked in the enterprise belonged to and was furnished by the mother; yet it was a part of the original scheme between the members of the family that he should be engaged to manage the business. He has the whole control and conduct of the business. He buys all of the goods, does all the advertising, sells the goods, and receives the money, and disburses it. He is the principal in the management of the business. Courts of equity look to the substance and effect of transactions

involved in controversy, and will not be deceived by mere words or forms, when the conduct of parties contradicts the forms and words used as a cover to their transactions. The conduct of Charles J. Andrus is a clear violation of the terms of his agreement with the complainants.

The only question we have had is how far complainants are entitled to relief against Cornelia N. Andrus. She has not entered into any agreement with complainants not to engage in the hardware business at Owosso; and unless she has entered into a combination with her husband and son to deprive the complainants of the benefit of their contracts, and has involved her rights with her co-defendants, she ought not to be enjoined. It is, however, apparent from the testimony that there was a complete understanding between the defendants to pursue the plan adopted for the very purpose of avoiding the binding force of the contracts with complainants, and hence she cannot be regarded as an innocent third party. She was examined as a witness in her own behalf, and on cross-examination testified as follows:

" *Q.* Now, you had not asked him for that money down to April, 1887?

" *A.* No, sir; I had not.

" *Q.* When you did ask him for it, you asked him for $3,000 to buy a hardware stock, to go into business in Owosso?

" *A.* Yes, sir.

" *Q.* Did you talk anything about the fact that your husband had given a contract to Mr. Thompson not to do business there any more?

" *A.* No, sir.

" *Q.* You never had heard they had made any such contract?

" *A.* I heard it talked of.

" *Q.* Where?

" *A.* Around the house. Mr. Andrus and Charley

73 MICH—36.

were talking about it. They only said that they had—he had—Mr. Andrus had—agreed not to go into business for ten years. He didn't want to go into business again. He had said, previous to that, he couldn't under his contract anyway."

The old debt, which had slumbered for 11 years, was seized upon as a pretext, and was demanded by the wife; utterly disregarding the fact that he had conveyed, or caused to be conveyed, to her, property for which he paid $1,900, and had made improvements thereon until it was worth $4,000. These benefits and gifts bestowed upon her were not considered, but, with the cruelty of a hard-hearted creditor, she demanded $3,000, and he paid it over for the express purpose of starting a hardware business, with Charles J. as manager. He had visited different points of the State with a view of locating in business, and she called him home from Detroit, where he was at work; and this scheme was entered into, and carried forward, under the circumstances stated. It was a scheme to violate the letter and spirit of the contract entered into with complainants; to deprive them of the good-will and custom which they had bargained for; to compete with and injuriously affect their trade; and in the manner it was attempted to be carried into execution, under the cover of the name and alleged means of C. N. Andrus, so as to deprive complainants of their right of action upon their contract, was a fraud upon their rights, and not to be tolerated by a court of equity. As a participant in the fraudulent scheme, Cornelia N. Andrus has no claims upon the court for protection.

The decree of the circuit court must be reversed, with costs of both courts, and a decree entered for complainants agreeably to the prayer of the bill.

SHERWOOD, C. J., MORSE and CAMPBELL, JJ., concurred. LONG, J., did not sit.