## BINGHAM *v.* BRANDS.

1. CONTRACTS—RESTRAINT OF COMPETITION—LEGALITY.
   A contract to sell lambs, wherein the buyer agrees not to buy any other lambs in certain counties prior to the date fixed for delivery, is void under 3 How. Stat. § 9354*j*, declaring void all contracts designed in any manner to prevent or restrict free competition in the production or sale of any agricultural article or commodity.

2. SAME—STATUTES—CONSTITUTIONALITY.
   3 How. Stat. § 9354*j*, declaring void all contracts designed in any manner to prevent or restrict free competition in the production or sale of any agricultural article or commodity, is constitutional.

Error to Shiawassee; Smith, J. Submitted October 20, 1898. Decided January 20, 1899.

*Assumpsit* by Washington Bingham and another against William D. Brands and another for the breach of a contract of sale. From a judgment for defendants on demurrer to the declaration, plaintiffs bring error. Affirmed.

*Selden S. Miner*, for appellants.

*A. L. Chandler*, for appellees.

LONG, J. This suit was commenced by filing the following declaration:

"For that whereas, heretofore, to wit, on the third day of May, in the year of our Lord one thousand eight hundred and ninety-seven, said plaintiffs and said defendants entered into the following contract, to wit: 'This agreement, made in duplicate, this third day of May, in the year of our Lord one thousand eight hundred and ninety-seven, by and between William D. Brands and Robert Thompson, parties of the first part, and Clare S. Bingham and Washington Bingham, parties of the second part, as follows, witnesseth: That the said parties of the first part hereby agree to sell and deliver to second parties what stockmen call good feeding lambs, to be delivered to second parties as follows: 1,000 lambs to be delivered any time during the first week in September, 1897, and 1,000 lambs to be delivered at any time during the last week in October, 1897, at the stock yards at Kirby, in Shiawassee county, Michigan, and the price and quality is to be as follows: No lambs are to weigh less than 50 pounds, no buck lambs, and no culling of lots, except to take out the bucks or the lambs; all to be delivered, with the exception of buck lambs, as they are purchased from the farmers, and all to be Michigan wooled lambs; and the price to be paid is $4\frac{1}{4}$ cents per pound for each lamb so sold of the 2,000 lambs. And second parties agree to buy of first parties 2,000 lambs at the time, place, price, and quality above stated, and to pay therefor the sum of $4\frac{1}{4}$ cents per pound when delivered; and second parties agree, in consideration of the above agreements of the first parties, not to buy, nor offer to buy, any Michigan feeding lambs, of the kind or quality herein mentioned, in Genesee or Shiawassee counties at any time before the first day of November, 1897; and second parties also agree that they will not buy, nor offer to buy, any lambs to be fattened by the seller nor themselves during the winter of 1897 and 1898, in lots of less than 200 lambs.' * * *

"And whereas, said plaintiffs, relying upon said contract, did all things that were necessary for them to do, as in said contract mentioned, and on the first day of September were ready, willing, and desirous of taking said 1,000 lambs as required and specified in said contract; yet said defendants, desiring to injure said plaintiffs, neglected and refused to deliver to said plaintiffs said lambs as required in said contract, and still refuse and neglect to de-

liver said lambs as in said contract specified, except 647, which have been delivered by said defendants to said plaintiffs as specified in said contract, leaving a balance of 353 lambs, which were to be delivered by said defendants to said plaintiffs at the stock yards at Kirby, in Shiawassee county, as specified in said contract, which said defendants refused and neglected to deliver as specified in said contract, and still refuse and neglect to deliver said lambs to said plaintiffs, as required in said contract."

The defendants interposed the following demurrer:

"In this cause the defendants say that the declaration of the plaintiffs is not sufficient in law; that the contract set forth in said declaration, upon which a recovery is sought, is made void by the statutes of this State, in that, among other things, it attempts to enhance, control, and regulate the market price of sheep, and to prevent and restrict free competition in the production and sale of sheep in Shiawassee and Genesee counties, contrary to public policy and the laws of this State. Said declaration avers no consideration for the contract or promise alleged therein to have been violated."

The court below sustained the demurrer, and plaintiffs bring error.

It is evident that no principle of the common law is violated by this contract. It has been repeatedly held that contracts not to carry on a specific trade or business in a town or county are valid. *Thompson* v. *Andrus*, 73 Mich. 551. We think, however, that the contract is in violation of section 9354*j*, 3 How. Stat., which provides:

"All contracts, agreements, understandings, and combinations made, entered into, or knowingly assented to by and between any parties capable of making a contract or agreement which would be valid at law or in equity, the purpose or object or intent of which shall be to limit, control, or in any manner to restrict or regulate the amount of production or the quantity of any article or commodity to be raised or produced by mining, manufacture, agriculture, or any other branch of business or labor, or to enhance, control, or regulate the market price thereof, or in any manner to prevent or restrict free competition in the production or sale of any such article or commodity, shall be utterly illegal and void."

By the terms of this contract, the plaintiffs were restrained from purchasing lambs in Genesee and Shiawassee counties. The contract had the effect to restrict free competition in those counties, and falls within the very terms of the statute. It is evident that the legislature, in the passage of this act, had the object in view to prevent the making of contracts which before had been recognized by the courts as valid at the common law. Many contracts, even in restraint of trade, when limited to certain territory, had been upheld. The test as to what constituted reasonableness in such contracts was stated by Tindal, C. J., in *Horner* v. *Graves*, 7 Bing. 735, as follows:

"We do not see how a better test can be applied to the question whether the agreement is reasonable or not than by considering whether the restraint is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public. Whatever restraint is larger than the necessary protection of the party can be of no benefit to either. It can only be oppressive, and, if oppressive, it is, in the eye of the law, unreasonable. Whatever is injurious to the interests of the public is void on the grounds of public policy."

Examples of contracts which have stood this test may be found in *Mitchel* v. *Reynolds*, 1 P. Wms. 181; *Gale* v. *Reed*, 8 East, 80; *Sternberg* v. *O'Brien*, 48 N. J. Eq. 370; *Martin* v. *Murphy*, 129 Ind. 464. The rule at the present time in England and in some of the States of the Union seems to be that such contracts are valid, provided they fulfill the test laid down by Tindal, C. J., in *Horner* v. *Graves*, *supra*.

It was to meet decisions of this character that the act in question was passed, the legislature evidently regarding all combinations of this character as inimical to the public welfare and contrary to public policy. Contracts or agreements made with intent to limit, control, or in any manner to restrict or regulate the amount of production or the quantity of any article or commodity to be raised

·or produced by mining, manufacture, agriculture, or any other branch of business or labor, or to enhance, control, or regulate the market price thereof, or to prevent or restrict free competition in the production or sale of any such article or commodity, are made invalid by the act, except such contracts as are recognized at common law, and in equity for the good will of a trade or business. These last-named contracts are, by a later clause in the section, left to stand upon the same terms and within the ·same limitations as recognized at common law and in ·equity.    Mr. Justice Howe, in *Kellogg* v. *Larkin*, 3 Pin. 136, speaking upon the question of public policy, says:

"As a general rule, the immediate representatives of the people, in legislature assembled, would seem to be the fairest exponents of what public policy requires, as being most familiar with the habits and fashions of the day, and with the actual condition of commerce and trade, their consequent wants and weaknesses; and a legislative enactment would seem to be the least objectionable form of exposition."

We find nothing in this statute beyond the power of the legislature to enact, and its effect should not be frittered away by construction.

The court below very properly sustained the demurrer. The judgment must be affirmed.

The other Justices concurred.