Oscar M. ULMANN, Administrator-with-Will Annexed of the Estate of Oscar Ulmann, deceased, Appellant,

v.

SUNSET–McKEE COMPANY, a corporation, Appellee.

No. 13983.

United States Court of Appeals, Ninth Circuit.

March 30, 1955.

Rehearing Denied June 14, 1955.

James Wolf, Los Angeles, Cal., for appellant.

Philip S. Ehrlich, Albert A. Axelrod, Irving Rovens, San Francisco, Cal., for appellee.

Before STEPHENS, FEE, and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

This is a diversity case. Plaintiff-appellant, Oscar M. Ulmann, is a citizen of California as was the testator, Oscar Ul-

mann, whom Oscar M. represents as administrator-with-the-will annexed. The defendant-appellee, Sunset-McKee Company, is organized under the laws of the State of Delaware and does business in California. The amount in controversy is just over $3,000.

To make it clear which "Ulmann" is meant, the decedent, Oscar Ulmann, a former employee of the defendant company, is referred to as "Sr." and his administrator, Oscar M. Ulmann as "Jr.," although there is no evidence that the two so designated themselves.

Ulmann, Sr. was employed as a salesman for the company for 23 years. He left the active service of the company on February 28, 1951, and he died on April 28, 1952. It appears that he had worked for the company in a territory in Northern California, in or near San Francisco.

Through the years of active work, Ulmann, Sr., had no real written employment contract. Further, it is evident that the company had no general retirement plan of its own. Compensation, if any, after retirement seems to have been dependent on whatever bounty the company desired to grant at the time of the commencement of retirement. Generally, however, employees of the class of Ulmann, Sr., seem to have been paid or given something after they ceased their activity with the business.

There is evidence that Ulmann, Sr., in 1950, asked his superiors if they could do anything for him if he should retire. Conversations resulted in the exchange of the following letters:

"(Sunset-McKee Letterhead)
"November 21, 1950
"Mr. Oscar Ulmann
"252 Wildwood Avenue
"Piedmont, California
"Dear Oscar:

"You have expressed the desire to retire from active duty at some future date.

"Your request has been discussed at a recent meeting of our Sales Advisory Committee, and it was agreed by this committee that, upon retirement, we would send you $150.00 per month for a period of three years. This amount would be considered as a pension and your Blue Cross and Aetna Insurance would continue in full force. You would, however, under the terms of our arrangements with these Insurance companies, contribute your share as you have done while on active duty.

"We are glad that we are able to advise you of this arrangement.

"With kindest personal regards I remain—

"Very truly yours,
"Sunset-McKee Company,
"/s/ E. R. McKeag,
"General Sales Manager"

"(Sunset-McKee Letterhead)
"San Francisco, Feb. 16, 1951
"To: A. Wittman, Controller
"Office: Oakland, Calif.
"Copy to: E. R. McKeag
"Please be advised that as of February 28th I am retiring from active service with the company and accepting the $150 per month retirement pay, as per letter of November 21, 1950.

"Will thank you to change my address on your records, for mailing of the above check and any other mail to read '11420 National Blvd., Los Angeles 64, Calif.' Thanking you and all with the company for many past favors and with kindest regards to all, I am,

"Sincerely,
"/s/ Oscar Ulmann"

"(Letterhead of Sunset-McKee)
"February 21, 1951
"Dear Oscar:

"We have your letter of February 16, 1951 advising us that as of February 28, 1951 you are retiring from active service with the Company and are accepting the retirement offer contained in our letter of November 21, 1950.

"I am dropping you this note, Oscar, as Mr. McKeag is out of the

city and will not return until March 5th. I am sure he will want to write you after he returns.

"In the meantime, we are advising our Accounting Department to put into effect the plan as outlined in our November 21st letter.

"I hope that when you are again in this vicinity you will drop around to see us.

"With kindest personal regards, I am,

"Cordially yours,
"/s/Walter
"Walter S. Arndt, Jr.,
"Assistant General Sales Manager
"Mr. Oscar Ulmann
"San Francisco, Calif.
"cc: McKeag"

Ulmann, Sr., ceased active work for the company at the end of February, 1951. Thereafter, the company remitted $150 (less the specified deductions) to Ulmann, Sr., until the time of his death. Thereupon this controversy began. Ulmann, Jr., asserted the company should make the payments remaining to him as administrator-with-the-will annexed for the unexpired portion of three years. The company replied that the payments were pure gratuity, but that if the contract were binding, it was personal to the decedent and expired with his life.

█ The evidence before the trial court consisted of a stipulation of facts, the exchange of letters hereinabove set forth, and the testimony of E. R. McKeag, sales manager of Sunset-McKee. The stipulation relates that during the course of his employment, Ulmann, Sr., had "protected accounts" to whom he alone sold the products of his company. At the time of severance from active service, says the stipulation, the company advised Ulmann, Sr., he would receive the pension so long as he did not compete with Sunset-McKee. Such a promise on the part of Ulmann, Sr., perhaps is implied under California law anyway. In the light of the stipulation of facts the trial court was entitled to find the sum total of Ulmann's rights in both written and oral agreements between Ulmann, Sr., provided it was not shown that the letters were comprehensive and intended to supersede the oral understandings. Parties may have their obligations on the same subject matter partly in writing and partly oral, if they so intend. After the stipulation the defendant was in no position to limit plaintiff to the exchange of letters. Further, it can be said, on the whole, the parties attempted to give the court all pertinent facts for its appraisal. McKeag testified fully for the defendant as to negotiations and this was without objection by plaintiff.[1]

The decision of this court necessarily involves a construction of the letters, consideration of the stipulation of the parties and the testimony of McKeag. In this the trial court has the usual presumptions of correctness.

The trial court concluded that Sunset-McKee made no binding obligation to Ulmann, Sr., but that if there were any obligation to pay Ulmann, Sr., it died with him. Plaintiff appealed.

Plaintiff asserted below and asserts here that there was an estoppel which forbade Sunset-McKee from denying consideration. Facts of estoppel which he said were present are: (1) that Ulmann, Sr., retired and took less pay than he could have received by staying on and working; and (2) that Ulmann, Sr., had agreed he would not compete with the company after leaving, a promise he kept.

Point (1) would have some validity if there had been some preceding basic employment contract. Point (2) need not be considered as a matter of estoppel in view of the determination the court

---

1. It is apparent that the reception of evidence went beyond California Civil Code, Sec. 1647, which is as follows:

"A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."

makes that there actually was consideration for the undertaking to pay $150 per month for 36 months,[2] which consideration included either an express or implied obligation not to compete or not to shift, within his (Ulmann's) ability, these customers to others.

■ As previously indicated, Ulmann, Sr., had had no written contract for over 22 years. However, consideration, if valuable, may be something quite slight.[3] Perhaps when Ulmann, Sr., on February 16, 1951, accepted in writing the offer of the company made in its letter of November 21, 1950, (and especially after the company's letter of rejoinder of February 21, 1951) he had an agreement for a pension for three years plus a further agreement to work until February 28, 1951, his date of retirement. The latter would cover whatever his current pay period was and end when retirement began. It could be said that the documents necessarily imply in fact an understanding that Ulmann, Sr., would continue to work to February 28, 1951. His bargain to work for a few days more may not have been the motivation for granting the pension, but this undertaking of Ulmann, Sr., is certainly valuable enough to support in law the implied promise to pay him on the same old basis for February, and the express promise of the company to pay him the pension.

■ But this court chooses primarily to uphold the contract as binding for the reason that consideration to support the company's obligation is to be found in Ulmann, Sr., being required not to compete by soliciting for any other employer his so-called "protected accounts," a little business in itself which he gave up, and which either expressly or impliedly he was obligated to give up if he were paid the pension.

Sunset-McKee's contentions (if they are correct) on lack of consideration necessarily import it had no binding obligation to Ulmann, Sr., had he lived. Doubtless had Ulmann, Sr., lived the company would have kept its promise. Now it falls back upon lack of consideration, believing that Ulmann, Jr., places an unfair construction on the contract when he asks Sunset-McKee to pay him after Ulmann, Sr., is gone.

And that brings this court to a construction of the contract hereinabove held binding. Was the obligation personal to Ulmann, Sr., or was it a general one which continues for the rest of its three year life to Ulmann, Jr., in his representative capacity?

If the obligation were expressed in the form of a note, no one would deny that the obligation survived Ulmann, Sr.

■ But here at the threshold there should be a consideration of the meaning of the word "pension" as used in the company letter of November 21, 1950. "Pension" is defined in Webster's as " * * * a stated allowance or stipend made by a government or business organization in consideration of past services or of the surrender of emoluments to one retired from service." That definition is not incompatible with survivorship of a "pension" obligation. From modern common experience, it is known that one pension plan may take care of the pensioner himself. Another plan specifically takes care of the pensioner's widow or perhaps minor children in addition to the pensioner. Therefore, this court holds that the use of the word "pension" by itself does not necessarily

---

2. It is probable that this court should not disturb the trial court's conclusions that there was no estoppel; that the findings thereon should stand as findings of fact not clearly erroneous.

3. Brawley v. Crosby Research Foundation, 73 Cal.App.2d 103, 166 P.2d 392. Schumm, by Whymer v. Berg, 37 Cal.2d 174, 231 P.2d 39, 21 A.L.R.2d 1051; Chrisman v. Southern California Edison Co., 83 Cal.App. 249, 256 P. 618.

limit an obligation to the lifetime of the decedent.[4]

■ But how should "pension" be construed here? There are many well known rules of contract construction. California sets forth many in its code.[5] Here this court finds no one rule of contract construction particularly applicable to the facts of this case except possibly the one where a doubtful meaning of language is involved, the language should be construed against him who wrote it.[6] Here the undertaking of the company (the letter of November 21st) was written by Sunset-McKee's general sales manager.

While always a court must seek to divine the intent of the parties, it may be doubtful if the parties here ever put their minds to the question of "suppose Ulmann, Sr., dies." Yet the underlying tenor of the agreement seems to be that the company was willing to reward Ulmann, Sr., with a total of $5,400 payable in 36 monthly installments of $150 each. Some slight weight for a total obligation of $5,400 (whether Ulmann, Sr., lived or died) perhaps may be found in the shortness of the term of bargain. Perhaps, a longer term obligation without any additional factor would tend to indicate an approximation of the employee's life expectancy and that the undertaking was personal to the employee. But even of this one should not speak with certainty.

■ A promise of a promisor (Sunset-McKee) must have a promisee (Ulmann, Sr.). The use of words of survivorship generally has gone out of fashion in ordinary contracts. A contract usually does terminate when "C" has contracted for "B's" personal service, whose service "C" wants and no one else's. But where "B" performed all the personal service required to be done at the time "C's" obligation to pay in installments begins (or where the death of "B" leaves him with his performance complete), it appears that the California courts are holding or will hold that such an installment obligation will survive death unless the contract specifies otherwise. See Howard v. Adams, 16 Cal.2d 253, 105 P.2d 971, 130 A.L.R. 1003, and Trower v. Young, 40 Cal.App.2d 539, 105 P.2d 160.

■ If the construction of the agreement here (which seems to have been designed and executed by the sales department) is an unsatisfactory one for Sunset-McKee, it is a matter within the company's power to correct in drawing future contracts. But if there is doubt, the employee (and his estate), if the employer selects the words, should have the advantage of his boss's language which is susceptible of two intrinsically reasonable but opposite constructions.

The judgment is reversed for proceedings not inconsistent with this opinion.

---

4. The first definition of "pension" given by Funk & Wagnall's New Standard (1940) Dictionary is:
  "A periodical allowance to an individual, or to those who represent him, on account of past services or some meritorious work done by him; especially such an allowance made by the government."

5. California Civil Code, Sec. 1635 et seq.

6. California Civil Code, Sec. 1654, provides as follows:
  "In cases of uncertainty * * * the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party; * * *."