**Konrad KELLER, Executor of the Estate of Vernon W. Moncur, Deceased, et al., Plaintiffs,**

v.

**CALIFORNIA LIQUID GAS CORPORATION, a Delaware corporation, Defendant.**

**Civ. No. 5831.**

United States District Court,
D. Wyoming.

Aug. 29, 1973.

Copenhaver & Castberg, Powell, Wyo., for plaintiffs.

Kline & Tilker, Cheyenne, Wyo., for defendant.

### JUDGE'S MEMORANDUM

KERR, District Judge.

Plaintiffs Don Moncur, Lyle Moncur, Robert Moncur and Max Moncur are heirs at law of Vernon Moncur, deceased. Konrad Keller is executor of the estate of Vernon Moncur. Defendant, California Liquid Gas Corporation, is a qualified foreign corporation doing business in the State of Wyoming.

Each of the parties has filed a motion for summary judgment, with accompanying affidavits, urging that there is no triable genuine issue of material fact. The Court agrees.

A summary of the undisputed facts is essential to understanding the issues involved.

On October 9, 1968, California Liquid Gas Corporation (Buyer) entered into a contract for the purchase of a wholesale liquid gas business operated by Vernon Moncur and Mary Jo Moncur (Sellers), who were doing business as L. P. Gas Service, Inc., a Wyoming corporation. On the same date, Sellers also sold a liquid petroleum gas appliance sale business, L. P. Gas Service Co., a Montana corporation, to the Buyer.

Ancillary to the sale of the above businesses, Sellers also entered into an agreement with Buyer whereby, as stated in their contract:

". . . [V]ernon W. Moncur and Mary Jo Moncur agree that they will not, commencing with the closing date and continuing for a period of ten (10) years thereafter, engage either directly or indirectly in the business of distributing or dealing in liquefied petroleum gas or solicit, serve, or sell in any manner, either directly or indirectly, either as principal or agent, any customer or account now being serviced or sold by seller . . . or compete with buyer in any way for the business of any customer or account of such type within the State of Montana, except for that shaded area shown on the map. . . ."

Buyers, in exchange for this broad agreement not to compete by Sellers, agreed to pay:

"2. (c) For the non-compete agreement described . . . the sum of One Hundred Thousand Dollars ($100,000.00). . . .

4. (c) The balance of the purchase of One Hundred Thousand Dollars ($100,000.00) for the non-compete agreement shall be paid by buyer to seller in ten yearly installments, each installment in the amount of Ten Thousand Dollars ($10,000.00) to be paid on October 30 of each succeeding year . . ."

The plaintiffs did not sign and were not named in the agreement.

On October 17, 1969, Sellers were killed in an airplane crash. Buyer paid

the annual installments in the amount of $10,000.00 each on October 30 in 1969, 1970 and 1971. Buyer did not make any payment on October 30, 1972, and refused to make any further payments.

Plaintiffs thereupon filed suit for $70,000.00, the balance remaining unpaid, and for a declaratory judgment that defendant was still bound by the agreement to pay on the non-compete agreement. Defendant counterclaimed, alleging that plaintiffs were either bound by the non-compete agreement in which case plaintiffs, due to the actions of some of them in engaging in the liquefied petroleum business, had harmed defendant in the amount of $100,000.00; or, if they were not bound, that the covenant not to compete was personal, terminating upon the death of the covenantors, in which case the defendant was entitled to $20,000.00 for payments made after the deaths of the covenantors.

In the motions for summary judgment, the issues joined being whether the non-compete agreements were personal covenants, terminating at death, or whether defendant could recover any damages for alleged breach of the covenant by some of the plaintiffs.

██ Summary judgment has been referred to as a drastic action, which this Court will not grant where there exists a genuine issue of fact. Although both parties may file motion for summary judgment, this does not mean that the Court is at liberty to grant one or the other, and that only questions of law are present. See Levenson v. Alpert, Tex.Civ.App., 399 S.W.2d 955 (1966). The Court must still determine whether any genuine issues of fact exist, Fed. R.Civ.P. 56(c). Some courts have followed the statement that, "Summary judgment may not be granted where there is the 'slightest doubt as to the facts'. Morrissey v. Procter & Gamble Company, 379 F.2d 675, 677 (1st Cir. 1967). Yet such an interpretation seems to be a rather misleading gloss on a rule that speaks of "genuine issue as to any material fact". If taken literally,

such a construction would deter practically any summary judgment for a "slight doubt" can be developed as to practically all things human, DeLuca v. Atlantic Refining Company, 176 F.2d 421 (2d Cir. 1949).

█ Though there may be some slight doubts, such will not prevent the granting of one motion or the other, so long as no genuine issue of fact exists. Summary judgment is a means to arrive at an efficient, businesslike resolution of a legal dispute and as so aptly stated by Judge Charles Clark, dissenting, in Arnstein v. Porter, 154 F.2d 464, 478 (2d Cir. 1946):

"... [I]t is error to deny trial when there is a genuine dispute of facts; but it is just as much error ... to deny or postpone judgment where the ultimate legal result is clearly indicated ... ."

The case at bar may present some slight issues of fact, but none of a material nature, and in any case, the ultimate legal result is clear.

█ All covenants are, of necessity, either real or personal. Whether a covenant runs with the land or is merely personal to the parties depends on the intention of the parties. Salisbury v. Columbian Fuel Corporation, Ky., 387 S. W.2d 864 (1965). A covenant will run with the land if the parties so intended and if it is one that may be imposed consistently with principle and equity, so as to bind future assigns or grantees. See Berardi v. Ohio Turnpike Commission, 1 Ohio App.2d 365, 205 N.E.2d 23 (1965).

█ A covenant not to compete, it has often been stated, is to be strictly construed and not be given effect beyond what is necessary to give the covenantee the protection needed. W. R. Grace & Co. v. Hargadine, 392 F.2d 9 (6th Cir. 1968). Such covenants not to compete are not favored at law and thus are strictly limited. They are not assignable by the covenantor, nor can the covenantee enforce them against the heirs of a deceased covenantor. It is for

such reasons that covenants not to compete have been held to be, by a majority of the courts, of a personal nature. See Mound Valley Vitrified Brick Co. v. Mound Valley Natural Gas & Oil Co., C. C., 258 F. 936; Williams v. Butler, 58 Ind.App. 47, 105 N.E. 387 (1914); Dolan v. Rogers, 149 N.Y. 489, 44 N.E. 167; 3 Page on Contracts § 1364. Where they have been held to be not personal, such cases are distinguishable on their facts and as involving local law. See Ulmann v. Sunset McKee Company, 221 F.2d 128 (9th Cir. 1955).[1]

The covenant entered into between the parties provided for payments in exchange for which the covenantors, Vernon Moncur and Mary Jo Moncur, agreed to refrain from any competition with Buyer for a period of ten years. Although such covenants are not favored, they are valid and enforceable if reasonable under the facts and circumstances of the particular case, and ancillary to the main purpose of a lawful contract. Okerberg v. Crable, 185 Kan. 211, 341 P.2d 966 (1972); United States v. Addyston Pipe & Steel Company, 85 F. 271 (6th Cir. 1898). The non-compete covenant was one that could not be assigned by the covenantors and was one that did not closely touch and concern any real property. See Mound Valley Vitrified Brick Co., supra. It was, in all respects, a personal covenant.

As a personal covenant not to compete, did all liabilities and duties terminate upon the deaths of the covenantors? Plaintiffs allege that only one of them, Konrad Keller, Executor, remained liable on the covenant, and that defendant remained obligated to pay the balance of the consideration as the covenantors had, in fact, fully performed. Defendant, in turn, claims it is released from payments as of the date of the deaths of the covenantors; and in the alternative, that plaintiffs have competed against defendant, resulting in damages to defendant in the amount of $100,000.00.

Being a personal covenant, the general rule has long been that only the covenantor or his executors or administrators are bound. 20 Am.Jur.2d, Covenants § 23. The basic reason is that such non-compete clauses, while upheld if reasonable, are rigidly scanned and sustained only if they are no wider than reasonably necessary for the protection of the covenantee's business. This protection has been limited to rendering only the personal representative of the covenantor as bound by the covenant, a policy in consonance with the treatment of such covenants by the courts. See Barr & Sons, Inc. v. Cherry Hill Center, Inc., 90 N.J.Super. 358, 217 A.2d 631 (1966); Emmert v. Richardson, 44 Kan. 268, 24 P. 480 (1890); Salzman v. Siegelman, 102 A.2d 406, 92 N.Y.S. 844 (App.Div.1905). As so graphically stated in another case:

> "The conduct of a wife or a son in destroying or appropriating a good will which a husband or father has sold may be morally reprehensible according to circumstances. A purchaser takes the risk . . ., that, after all, the covenant may prove to have little or no protective value . . . [H]e cannot complain merely because he is disappointed in respect to the adequacy of his protection . . .". Fleckenstein Bros. Co. v. Fleckenstein, 66 N.J.Eq. 252, 57 A. 1025 (1904). See also Schumacher v. Loxterman, 77 N.E.2d 257 (1947).

It is evident from the foregoing that the plaintffs, with the exception of Konrad Keller, Executor for Vernon Moncur, cannot be held liable for any harm resulting due to their engaging in competition with the defendant. As to Konrad Keller, Executor, nothing is alleged that would leave him liable under the covenant.

1. In Ulmann the court found a covenant against competition not to have terminated at death. But the contract there spoke in terms of a "pension" which the court decided did not limit defendant's obligation to the lifetime of the decedent.

The court is not unmindful that other courts have expanded the scope of the written covenant not to compete beyond those persons included by the general rule. But in most of these cases, the courts have found that the covenantor was so involved that the competing business was in fact owned and operated by him. In this respect, the present case is clearly distinguishable. See the leading case, Thompson v. Andrus, 73 Mich. 551, 41 N.W. 683 (1889).

Yet, plaintiffs would ask this court to still hold defendant liable on the unpaid balance, $70,000.00, for the covenant not to compete. It is clear by reference to cases and some basic principles of equity that this cannot be done.

As a personal covenant made by the Sellers, it is clear that one not a party to it cannot be enjoined or be held liable under it. Just as clearly, such personal covenants have been held to terminate at death. In re International Match Corporation, 20 F.Supp. 420 (D.C.N.Y.1937); Jones v. Servel, Inc., 135 Ind.App. 171, 186 N.E.2d 689 (1962), 6 Corbin, Contracts § 1335 (1961). Upon the death of the covenantors, all rights and duties under the covenant not to compete ceased. The only duty upon the covenantee was to make compensation for services already received. Where the plaintiff brings an action on the contract, rather than in quantum meruit, the issue is whether there has been complete performance. The death of a covenantor is irrelevant to the resolution of such issue. This theory has been tempered to a certain extent. As held in Williams v. Butler, supra, at 390:

"While in early times contracts were strictly construed, under the more modern doctrine it has been held that where parties enter into an entire special contract for a stipulated compensation, and it is partly performed, but before completion one of the parties dies, . . . there is no liability upon the contract. But where, though acting under such contract, one of the parties [has] done for the other party something of value, which he has accepted, the party so benefited is responsible . . . to the extent of the net value received by him. . . ."

Defendant apparently concedes that the $10,000.00 paid on October 30, 1969, was proper compensation for the first year's services under the covenant.

Plaintiffs contend that defendant would not have made similar payments on October 30, 1970, and October 30, 1971, unless it believed itself to be obligated. Although where parties have accorded a practical construction to their contract, that construction will be given substantial weight in determining proper interpretation; yet when a written contract is clear and unambiguous, the conduct of the parties cannot be used to prove that it means something different than it says. See Buder v. New York Trust Company, 82 F.2d 168 (2d Cir. 1936); Fanderlik-Locke Co. v. United States, 285 F.2d 939 (10th Cir. 1960). The covenant in issue is clear and unambiguous; it is of a personal nature; and it terminated upon the deaths of the covenantors. As stated by many, equity will not assist a party seeking to enforce a hard bargain. The right to specific performance depends upon circumstances and conditions in addition to the existence of a valid contract. Though the contract be free from fraud, mistake, or other feature that would authorize a court to set it aside, equitable relief may be denied if in acting under it plaintiffs have resorted to unfair conduct. These are all expressions commonly used in elaboration of the hoary maxim: "He who comes into equity must come with clean hands". See Dutch Maid Bakeries v. Schleicher, 58 Wyo. 374, 131 P.2d 630 (1942); Pomeroy on Specific Performance, § 38, 3d Ed. (1926). Plaintiffs would ask the court to allow them to compete against defendant while still requiring payments under a covenant, which as shown, supra, has ceased to exist. The court cannot be a party to such an unconscionable bargain.

[19]   The Court therefore holds that the covenant not to compete ceased upon the deaths of the covenantors; that covenantee is entitled to the $20,000.00 paid after the deaths of the covenantors, but not to any damages for any acts of competition engaged in by those plaintiffs herein found not to be bound by the covenant.

An order will be entered denying plaintiffs' motion for summary judgment and granting defendant's motion for summary judgment in the amount of $20,000.00.