**Melinda RUDD, Administratrix of the Estate of Hy Rudd, Plaintiff and Respondent,**

v.

**Mel PARKS, Defendant and Appellant.**

**No. 15491.**

Supreme Court of Utah.

Dec. 13, 1978.

---

Vaughn W. North of Criddle, Thorpe & Western, Salt Lake City, for defendant and appellant.

Bernard L. Rose and Irving H. Biele, Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Defendant appeals from a judgment of the District Court awarding plaintiff the balance due on a written contract for the sale of a business. Affirmed. Costs are awarded to plaintiff.

Plaintiff's decedent, Hyman Rudd, owned and operated, as a sole proprietorship, a successful waste collection business in the Salt Lake area. After suffering a severe heart attack early in 1973, Rudd decided to sell his business. He contacted Mel Parks, defendant herein, who operated a similar business near Boise, Idaho, and the parties began negotiations for the purchase and sale of Rudd's business. These negotiations culminated in a letter, dated September 6, 1973, drafted by Parks' attorney, offering to purchase Rudd's business for $180,000 that sum to be allocated $100,000 for Rudd's equipment, $15,000 for his accounts, and $65,000 for a covenant not to compete for five years. Rudd did not accept this offer, and on September 19, 1973, Parks, again through his attorney, offered Rudd $192,000 for the business, allocating $82,000 for assumption of debts and equipment, $15,000 for goodwill, and $95,000 for a covenant not to complete. Parks' offer specifically discussed consultations between Rudd's and Parks' accountants concerning the allocations and total purchase price.

On September 21, 1973, Rudd stated his acceptance of Parks' offer in a letter to Parks' attorney stating:

> This is to confirm our telephone conversation whereby I agree to sell my business, Salt Lake Sanitation, to Mr. Mel Parks. *The total purchase price as stated in your letter will be $192,000.* The figures for the purchase as allocated in items 1, 2, 3 [the equipment and debt assumption, the goodwill and the covenant not to compete] are acceptable. The transaction to be consummated by October 1st 1973 at which time Mr. Parks will become the owner of Salt Lake Sanitation Co. [Emphasis added.]

Copies of the letter were mailed to Mel Parks and Dexter Snow, CPA for Rudd.

Parks' attorney prepared three documents, the "Agreement to Sell and Purchase Equipment," the "Agreement to Sell and Purchase Customer Accounts and Good Will," and the "Covenant Not to Compete." Each was signed by Parks on September 28,

1973 and by Rudd on October 1, 1973. At the time of Rudd's death, in October of 1975, the agreement to purchase equipment and the agreement to purchase goodwill and accounts had been fully performed. The covenant not to compete, however, had not been fully performed, its terms providing that the $95,000 allocated to it was payable, after an initial payment of $6,500 in January of 1974, in monthly installments of $1,500 for five years, ending on December 20, 1978. Rudd, in return, covenanted not to compete with Parks for five years from the date of the agreement, i. e., until October 1, 1978. The covenant not to compete further provided "It is expressly understood that the stipulations aforesaid are to apply to and bind the heirs, executors, and administrators of the respective parties."

After Rudd's death, Parks made no further payments. Plaintiff, administratrix of Rudd's estate, instituted this action to recover the amount of $34,500 for payments due under the covenant from October 20, 1975, to and including the date her complaint was filed.

The District Court found that the three agreements constituted one integrated contract (a "package deal") for the purchase and sale of Rudd's business, that the consideration for the sale was fully delivered, that Parks owed the full amount of money, and that neither Rudd nor his heirs or personal representative competed with Parks. The District Court also found

> the intent of the parties at the time of signing was to create an entire agreement of purchase and sale, the purchase price for which was the sum of $192,000; $95,000 of that sum was attributed to a covenant not to compete for the tax and business purposes of the Buyer.

In its amended conclusions of law, the District Court ruled that plaintiff is entitled to judgment as prayed for in her complaint and that Parks is not excused from the payment of any portion of the purchase price for the business. It also concluded, however, that the covenant not to compete is a personal covenant and is a restraint of trade.

Parks' several contentions on appeal center around two issues: first, that the covenant not to compete stands alone as an integrated agreement and is not simply one of the documents forming the contract for the purchase and sale of Rudd's business, and second, that the covenant not to compete is a personal covenant and a restraint of trade.

■ As noted above, the basis of the District Court's decision in favor of plaintiff was its finding and conclusion that the three documents constituted one integrated contract for the purchase and sale of Rudd's business. The finding and conclusion were amply supported by the evidence presented to the District Court and we will not disturb them on appeal. In the September 6th letter from Parks' attorney to Rudd, Parks first offered to buy the business, stating, as noted supra:

> Mr. Parks offers to purchase the business for the sum of $180,000.00, . . . allocation of the total purchase price would be $100,000.00 for your equipment, $15,000.00 for your customer accounts, and $65,000.00 for a covenant not to compete . . .

The September 19th letter stated:

> I have been informed by Mr. Mel Parks that, after discussions between your accountant and his accountant, his proposal to purchase your business should be altered from that outlined in my letter to you dated September 6th.
>
> The total purchase price would be set at $192,000 and would be allocated as follows: . . .

Rudd's letter of acceptance, also, as noted *supra,* establishes the $192,000 purchase price.

At trial, Parks testified that his tax advisor advocated allocating $95,000 to the covenant not to compete so that Parks could deduct it as an operating expense rather than capitalizing and depreciating it. As to the allocation, Parks testified "That was the only terms on which I would buy."

Defendant Parks' second contention, that the covenant not to compete is a personal covenant and a restraint of trade, therefore becoming unenforceable with Rudd's death, is, in this matter, significant only if we were not to sustain the District Court's determination that the three agreements were integrated and hence that the covenant not to compete was supported solely by its own consideration, the $95,000, and not to be read and construed independently of the other documents which together form the agreement to purchase and sell the business. Defendant successfully moved to amend the conclusions of law to hold that the covenant was personal and a restraint of trade. He now asserts on appeal that since the purpose of a covenant not to compete is to protect the goodwill of the purchased business,[1] after the death of Rudd the covenant not to compete becomes unenforceable as it is no longer necessary to protect the goodwill of the business from competition. Had the District Court found the covenant not to compete severable from the other two agreements, a different problem than that presented here would arise, but the Court properly applied the legal principles to this fact situation which are consistent with its ruling that the consideration paid to Rudd was for the purchase of his business as a whole.

Defendant cites *Keller v. California Liquid Gas Corporation*,[2] a case somewhat similar to this case, to support its position. In *Keller,* plaintiff's decedent sold his business to defendant—gas company. As part of the sale, the negotiations and terms of which were not disclosed in the case, the parties entered into a covenant not to compete for ten years, for which defendant was to pay $10,000 each year. The seller died and defendant ceased making payments. The United States District Court for Wyoming held that the covenant not to compete was

personal and defendant's obligation to pay ceased upon the death of the seller. However, in *Keller* the Court did not rule, as in this case that the covenant not to compete was part of an integrated contract of sale. Also, in *Keller,* the heirs of the deceased actively competed against defendant-purchaser. There was no mention in *Keller* of a clause making the covenant not to compete binding on the heirs.

Defendant Parks' other cases are factually distinguishable from this case because they combine an affirmative covenant to perform, such as serving on the purchaser's board of directors[3] or continuing in the employ of the purchaser[4] with the covenant not to compete.

In support of the result reached by the District Court in this case, plaintiff cites *Ulmann v. Sunset-McKee Co.*[5] In that case, decedent's employer agreed to pay decedent a monthly pension for three years for his promise not to compete with the employer. The United States District Court's ruling upholding the employer's refusal to pay after the employee's death was reversed on appeal. The Circuit Court of Appeals held that the agreement, drawn by the employer, should be construed against it, and that while it was doubtful that either of the parties actually contemplated the death of the employee during the time of the agreement,

> . . . the underlying tenor of the agreement seems to be that the company was willing to reward Ulmann, Sr. with a total of $5,400 payable in 36 monthly installments of $150 each. . . .[6]

In this case, the District Court found that Rudd's death was not contemplated by the parties as they entered the contract to purchase and sell the business, yet to purchase that business, it found that Parks was willing to pay Rudd $192,000, $95,000 of which was allocable to the covenant not to com-

1. *Allen v. Rose Park Pharmacy,* 120 Utah 608, 237 P.2d 823 (1951).

2. 363 F.Supp. 123 (D.Wyo.1974).

3. *Jones v. Servel, Inc.,* 135 Ind.App. 171, 186 N.E.2d 689 (1962).

4. *Jones v. Joy Manufacturing Co.,* Mo., 381 S.W.2d 860 (1964).

5. 221 F.2d 128 (9th Cir. 1955).

6. Id.

pete. In such a case, the death of Rudd does not relieve Parks of his obligation to complete payment of the purchase price.

CROCKETT, MAUGHAN and HALL, JJ., concur.

ELLETT, C. J., concurs in the result.